1  Mark Mahon
2  movieman1000@live.com
   Mariners Rest,
3  Mariners View Avenue,
   Passage West,
4  Cork,
   Ireland
5  Telephone: 353 87 742 4444

6  *Plaintiff Pro Se*

**F I L E D**

FEB 0 3 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7          **UNITED STATES DISTRICT COURT**

8          **NORTHERN DISTRICT OF CALIFORNIA**

9

10  MARK MAHON, AN INDIVIDUAL,          CASE NO. **C25-01083** TLT.

11              Plaintiff,               **COMPLAINT FOR:**

12          v.                           1.  RACKETEER INFLUENCED AND CORRUPT
                                             ORGANIZATIONS ACT (RICO) CLAIM —
13  ENTERTAINMENT ONE UK LIMITED.;          18 U.S.C. § 1962;
    SIMON OSBORN, AN INDIVIDUAL; APPLE
14  INC.; APPLE INC. D/B/A ITUNES; APPLE    2.  FRAUD ON THE COURT (FEDERAL);
    INC. D/B/A ITUNES STORE.; GOOGLE
15  LLC.; GOOGLE LLC. D/B/A GOOGLE         3.  OBSTRUCTION OF JUSTICE (FEDERAL);
    PLAY; YOUTUBE LLC; ALPHABET INC.;
16  AND DOES 1 - 26,                       4.  FRAUD BASED ON SPOLIATION OF
                                             EVIDENCE (FEDERAL PROCEEDINGS);
17              Defendants.
                                          5.  UNJUST ENRICHMENT (FEDERAL CLAIMS);
18
                                          6.  BREACH OF DISCOVERY OBLIGATIONS;
19
                                          7.  FALSIFYING FINANCIAL STATEMENTS;
20
                                          8.  FRAUD [FIVE COUNTS];
21
                                          9.  CIVIL CONSPIRACY;
22
                                          10. INTENTIONAL INFLICTION OF EMOTIONAL
23                                            DISTRESS;

24                                        11. ABUSE OF PROCESS;

25                                        12. CALIFORNIA UNFAIR COMPETITION LAW
                                             (UCL) CLAIM – CAL. BUS. & PROF. CODE §
26                                           17200;

27                                        **DEMAND FOR JURY TRIAL**

28

Plaintiff, Mark Mahon, alleges as follows:

## JURISDICTION

1.     This is a civil action seeking damages under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–1968; Fraud on the Court (Federal); Obstruction of Justice (Federal); Fraud Based on Spoliation of Evidence (Federal Proceedings); Unjust Enrichment (Tied to Federal Claims); Breach of Discovery Obligations and Falsifying Financial Statements under federal law and state law; Fraud, Civil Conspiracy, Intentional Infliction of Emotional Distress ("IIED"), Abuse of Process, and California's Unfair Competition Law ("UCL") – Cal. Bus. & Prof. Code § 17200 under state law.

2.     The Court has original subject matter jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331 and pursuant to 28 U.S.C. § 1332 under diversity of citizenship.

3.     The Court has further supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. §§ 1367. Plaintiff's state law claims arise from the same common nucleus of operative facts as the underlying federal claims. Resolving all state and federal claims in a single action serves the interests of judicial economy and convenience to all parties.

4.     In prior actions before this district, case nos. 4:20-cv-01527-YGR and 4:21-cv-08562-YGR, Defendants Entertainment One UK Limited ("EOne UK") and Simon Osborn ("Osborn") falsely represented that it was not subject to the jurisdiction of this Court. Specifically, EOne UK through its counsel, argued that this Court lacked jurisdiction over them but lied to the court about the jurisdictional issue.

5.     However, new evidence came to light, revealing that EOne UK and Osborn intentionally misrepresented its business activities, concealed the true agreements they presented to the Court and its contacts with California, including their substantial business dealings within the State of California that justifies the Court's jurisdiction over them. Furthermore, Plaintiff could not have discovered this through reasonable diligence. This Complaint shows the newly discovered evidence could not have been reasonably discovered during the limited jurisdictional discovery in case no. 4:20-cv-01527-YGR, and the new claims are clearly different from those previously dismissed.

- 1 -

6.     This Court has personal jurisdiction over Entertainment One UK Limited and Simon Osborn pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure and California's long-arm statute, Cal. Code Civ. Proc. § 410.10, as their conduct related to the Complaint caused harm to Plaintiff within the United States, including in the State of California. Osborn participated in and directed activities that had a direct and substantial connection to this forum, including, but not limited to: a. Making fraudulent representations and omissions in communications directed in the United States; b. Facilitating the submission of false statements and documents in prior judicial proceedings within the jurisdiction of this Court; and c. Conspiring with others to interfere with Plaintiff's legal rights and obstruct justice in proceedings before this Court.

7.     As detailed in this Complaint, EOne UK and Osborn's intentional misrepresentations regarding jurisdiction and the newly discovered evidence of its substantial business dealings in California, Plaintiff respectfully asserts that the Court has both personal jurisdiction over Entertainment One UK Limited and Simon Osborn and subject matter jurisdiction over the claims asserted herein against them. Their fraudulent conduct in misrepresenting facts and submitting false evidence constitutes an abuse of the judicial process and warrants the exercise of jurisdiction by this Court.

8.     Plaintiff alleges that Simon Osborn personally participated in and contributed to the unlawful actions of Entertainment One UK Limited. Specifically, Osborn: a. Knowingly made or facilitated false statements and misrepresentations to this Court to secure dismissal of Plaintiff's prior claims against Entertainment One UK Limited and other related entities; b. Directed or authorized the submission of fraudulent documents, which it got sealed by the Court, including concealing and falsifying jurisdictional evidence, to mislead the Court and evade liability; c. Acted in concert with other defendants, including but not limited to Entertainment One UK Limited, to perpetuate a scheme of fraud, concealment, and obstruction of justice; d. Personally facilitated actions designed to shield Entertainment One UK Limited and related entities from accountability for its unlawful conduct; and e. Engaged in other acts of fraud, conspiracy, and bad faith conduct, as further detailed in the specific claims for relief.

- 2 -

9.      Osborn and EOne UK's actions, taken individually and in concert with others, were integral to the harm suffered by Plaintiff. Osborn's conduct, including the submission of fraudulent documents and participation in a scheme to obstruct justice, caused significant damages to Plaintiff, including but not limited to: a. Economic losses resulting from the dismissal of claims based on fraudulent evidence; b. Emotional distress caused by Osborn's intentional and malicious conduct; and c. Impairment of Plaintiff's ability to seek redress and accountability through the judicial system.

## VENUE

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2), (c)(3), as Apple Inc.; Apple Inc. doing business as iTunes; Apple Inc. doing business as iTunes Store; Google LLC.; Google LLC doing business as Google Play; YouTube LLC and Alphabet Inc. reside in this judicial district and are a substantial part of the happenings in the district and omissions giving rise to the claims occurred within it. This venue is also proper pursuant to 28 U.S.C. § 1332 under diversity of citizenship, as Plaintiff is an Irish citizen and resident of the Republic of Ireland.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants Entertainment One UK Limited and Simon Osborn, an individual, have conducted substantial business activities and committed misconduct within this District that have directly harmed Plaintiff. These claims arise from specific events in this District, including but not limited to the dissemination of false and misleading communications, misrepresentation of Plaintiff's intellectual property, and the unauthorized exploitation of Plaintiff's creative works, all of which are central to the claims asserted in this Complaint.

## THE PARTIES

12.     Plaintiff, Mark Mahon ("Plaintiff"), is an Irish Film and Television Academy award-nominated independent filmmaker based in Cork, Ireland. His creative works and books have been featured and sold internationally. In 2006, after completing a Director's Diploma with Raindance, Plaintiff began work on his debut feature film. He wrote, produced, financed, and directed the motion picture *Strength and Honour* (the "Motion Picture"), which he owns and is

- 3 -

1    the subject of this dispute. Plaintiff used his life savings to pursue his chosen career in

2    filmmaking.

3            13.    Defendant Entertainment One UK Limited is a foreign corporation or company

4    incorporated and organized under the laws of the United Kingdom, with its principal place of

5    business located in London. Despite being a foreign entity, this Court has jurisdiction over EOne

6    UK pursuant to Federal Rule of Civil Procedure 4(k)(2) and 28 U.S.C. § 1332(a), as the

7    Defendant has sufficient minimum contacts with the United States and the State of California, and

8    the exercise of jurisdiction over EOne UK does not offend traditional notions of fair play and

9    substantial justice. The company is primarily involved in the acquisition, distribution, and

10   production of feature films, music and television series. Entertainment One UK Limited

11   previously operated under E1 Entertainment UK Ltd. until it changed its name on or around

12   September 1, 2010.

13           14.    Defendant Simon Osborn (collectively, EOne UK and Osborn shall be referred

14   herein as "EOne") is an individual residing in the United Kingdom and, upon information and

15   belief, a citizen of the United Kingdom. At all relevant times, Osborn was employed by or acted

16   as an officer, director, agent, or representative of Entertainment One UK Limited. Osborn, in his

17   capacity as Head of Legal and Business Affairs for EOne UK, knowingly engaged in providing

18   sworn declarations and false evidence for EOne UK in previous cases before this district. Osborn

19   engaged in acts within the scope of his employment or agency that are material to the claims

20   asserted in this complaint.

21           15.    Defendant Apple Inc. ("Apple Inc") is a corporation organized and existing under

22   the laws of the State of California, with its principal place of business located and headquartered

23   at One Apple Park Way, Cupertino, California. Apple is an American multinational technology

24   company engaged in the design, develops, manufacture, and sale of consumer electronics,

25   software, digital and online services. Apple operates globally and conducts substantial business

26   within the State of California and throughout the United States.

27           16.    Defendant Apple Inc. doing business as iTunes ("iTunes") operates as a digital

28   media platform providing music, movies, television shows, and other content to consumers.

iTunes is an integral part of Apple Inc.'s ecosystem, serving as a primary platform for the distribution and monetization of digital media. Apple Inc. operates iTunes under its corporate umbrella and derives substantial revenue from its services, which are accessed by millions of users globally, including with the State of California. On May 22, 2020, Plaintiff spoke to Apple Inc.'s counsel of record as of this date, David Eberhart, and he confirmed that iTunes is a D/B/A of Apple Inc.

17.    Defendant Apple Inc. doing business as iTunes Store ("iTunes Store") (collectively, Apple Inc.; iTunes and iTunes Store shall be referred herein, as "Apple"), operates as the online storefront for the purchase, rental, and download of digital content, including music, movies, television shows, and applications. The iTunes Store is a critical component of Apple's digital media and software ecosystem, generating significant revenue through transactions conducted by consumers across the United States and internationally. The iTunes Store is managed, controlled, and operated by Apple Inc. from its principal place of business in Cupertino, California. The digital media store operates from the iTunes digital platform. As of June 2013, the iTunes Store possessed 575 million active user accounts, and served over 315 million mobile devices. The iTunes Store is available on most Apple devices, including the Mac, the iPhone, the iPad, the iPad touch, and the Apple TV, as well as on Windows (inside iTunes).

18.    Defendant Google LLC ("Google LLC") is a Delaware limited liability company with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California. Google is a multinational technology company engaged in the development and provision of online services, products, and platforms, including but not limited to its search engine, advertising services, and cloud-based tools. Google conducts substantial business in the State of California and throughout the United States.

19.    Defendant Google LLC, doing business as Google Play ("Google Play"), operates as a division of Google LLC, providing a digital distribution service and platform for applications, games, media, and other digital content. Google Play serves as a key platform for developers, distributors and consumers, generating significant revenue through app sales, subscriptions, motion picture rentals, and in-app purchases. Google Play is integral to Google

1   LLC's operations and profits and is headquartered at the same principal address in Mountain

2   View, California.

3        20.    Defendant YouTube LLC ("YouTube") is a Delaware limited liability company

4   and a wholly owned subsidiary of Google LLC. YouTube operates as a global video-sharing

5   platform, enabling users to upload, view, and monetize video content. YouTube generates

6   substantial revenue through advertising, movie rentals and premium subscription services. Its

7   principal place of business is also located at 901 Cherry Ave. San Bruno, California. YouTube's

8   operations are deeply integrated with Google LLC and Alphabet Inc., and it serves as a primary

9   source of revenue for the parent entities.

10       21.    Defendant Alphabet Inc. ("Alphabet") (collectively, Google, LLC., Google Play,

11  YouTube and Alphabet shall be referred herein as "Google") is a Delaware corporation and the

12  parent holding company of Google LLC, YouTube LLC, and their associated subsidiaries and

13  divisions. Alphabet maintains its principal place of business at 1600 Amphitheatre Parkway,

14  Mountain View, California. Alphabet exercises substantial control over the operations, finances,

15  and decision-making of Google LLC and YouTube LLC. Alphabet engages in the commingling

16  of business operations, profits, and resources with its subsidiaries, including Google LLC and

17  YouTube LLC, such that it operates as a unified entity.

18       22.    Collectively, EOne UK, Osborn, Apple, and its subsidiaries and divisions, as well

19  as Google including its parent, subsidiaries and divisions (collectively referred to herein as

20  "Defendants"), have collaborated in the unauthorized copying, reproducing, performing,

21  distribution and monetization of the Motion Picture's metadata in California. Plaintiff alleges that

22  Defendants acted in concert, directly or indirectly benefiting from and participating in the

23  exploitation of the Motion Picture, and are jointly and severally accountable for their actions.

24       23.    The true names and capacities of the defendants named herein as DOES 1 through

25  26, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore

26  sues said defendants by said fictitious names. Plaintiff is informed and believes, and based

27  thereon alleges, that each DOE defendant is legally responsible for the events and conduct

28  described in this Complaint and caused injury and damages to Plaintiff. Plaintiff will amend this

1    Complaint to include the true names and capacities of these DOE defendants when they are

2    ascertained.

3        24.    Plaintiff is informed and believes, and based thereon alleges, that each of the

4    Defendants, including DOES 1 through 26, directly participated in, profited from, or otherwise

5    contributed to the unlawful acts described in this Complaint. Plaintiff further alleges that these

6    Defendants acted in coordination, intentionally or negligently facilitating the unauthorized

7    exploitation of the Motion Picture within California, the United States and elsewhere, causing

8    harm to Plaintiff.

9        25.    Each Defendant is sued individually, and Plaintiff alleges that Defendants and

10    DOES 1 through 26 acted in concert and collusion with one another, commingling their efforts

11    and resources to achieve the unlawful acts described herein. This includes, but is not limited to,

12    the copying, reproducing, performing, distribution, marketing, and monetization of the

13    unauthorized and unlicensed version of the Motion Picture from in California.

14        26.    Plaintiff is informed and believes, and based thereon alleges, that each Defendant,

15    including DOES 1 through 26, acted as an agent, servant, employee, or representative of the other

16    Defendants. Plaintiff further alleges that all actions taken by each Defendant were authorized,

17    directed, or ratified by the other Defendants, creating joint and several liability for the harm

18    caused to Plaintiff.

19                    **BACKGROUND AND FACTUAL ALLEGATIONS**

20        27.    Defendants' actions have left Plaintiff with no choice but to seek judicial

21    intervention to expose their deceptive practices, which contradict the ethical corporate image they

22    publicly portray. EOne orchestrated these actions but evaded liability by securing dismissal under

23    false pretenses, leaving Apple and Google to act on its behalf while refusing to engage fairly.

24    Defendants misrepresented facts in previous matters by requesting to seal documents as

25    confidential, only to later make false public statements contradicting the sealed information to

26    prejudice Plaintiff. This bad-faith conduct was intended to mislead the Court, obstruct Plaintiff,

27    and abuse the judicial process, thereby undermining the integrity of judicial proceedings.

28        28.    Additionally, Plaintiff did not obtain verifiable evidence until December 2019 that

his Motion Picture masters were copied in California without his consent. No court has addressed

how they were unlawfully copied, distributed worldwide, and exploited by companies in the

District, which used them on their California platforms despite Plaintiff never transferring North

American rights or receiving compensation. Such actions are illegal, unethical, and morally

disgraceful.

29.    At all times relevant hereto, Plaintiff has been and remains the holder of the

exclusive rights under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., and all amendments

thereto (the "Copyright Act"), including the rights to produce, copy, reproduce, distribute,

display, sell, import, export, supply, publicly perform, or license the reproduction of his award-

winning motion picture, "STRENGTH AND HONOUR" (collectively, the Motion Picture,

official trailer and branded, award-winning cover shall be referred herein as the "Show"). These

rights extend to creating and reproducing derivative works, including but not limited to the cover,

label, packaging, and trailer. Plaintiff's exclusive rights pertain to the whole world, but

specifically the territories of North America and the Republic of Ireland that are the subject of

this action. See Exhibit 1, Book of Evidence[1] ("BE"). All physical masters of the Show, including

but not limited to the Motion Picture's metadata are Plaintiff's personal property.

30.    Plaintiff, Mark Mahon, is an accomplished entrepreneur who has leveraged his

extensive experience, financial resources, talent, and creativity—developed over years of

dedicated effort—to achieve his goal of creating motion pictures. Plaintiff is the sole writer,

producer, financier, director, author, and brand creator of his award-winning Show, which

features a distinguished cast, including Michael Madsen ("Reservoir Dogs," "Kill Bill," "Die

Another Day," "Donnie Brasco," "Free Willy"), Vinnie Jones ("Snatch," "Lock, Stock and Two

Smoking Barrels," "X-Men: The Last Stand"), Patrick Bergin ("Sleeping with the Enemy,"

---

[1] Plaintiff will file the supporting Exhibits in a Book of Evidence once service of the summons is complete. For clarity, Plaintiff has organized the supporting Exhibits into three separate Books of Evidence ('BE,' 'BE2,' and 'BE3'), each corresponding to distinct categories of evidence relevant to this Complaint. BE contains legal agreements and supporting exhibits, BE2 includes declarations of witnesses with their supporting evidence, and BE3 comprises of exhibits, which will be subject to a Motion to Consider Whether Another Party's Material Should Be Sealed.

"Patriot Games," "Robin Hood"), and Richard Chamberlain ("The Towering Inferno," "The Count of Monte-Cristo," "The Thorn Birds," "Shogun"). To bring this project to fruition, Plaintiff exhausted his life savings and personally borrowed substantial funds from family and friends. See Exhibit 2–3, BE.

31.     The Show tells the compelling story of a single father who must break his dying wife's final wish to never box again in order to save his young son's life. Plaintiff devoted over two years traveling internationally on the film festival circuit with the main cast to establish a strong brand for the Motion Picture. See Exhibit 4, BE. The Show garnered critical acclaim, earning two Irish Film and Television Academy award nominations (Exhibit 4 at 2, BE), securing over thirty-two (32) award nominations globally, and winning more than twenty (20) awards at film festivals worldwide. See Exhibit 1, BE.

32.     The success of the Show generated significant word-of-mouth acclaim, culminating in a Royal screening hosted by His Serene Highness Prince Albert II, Sovereign Prince of Monaco, at the Palace of Monaco. See Exhibit 5, BE. Furthermore, Plaintiff, Mark Mahon, and the Show's lead actor, Michael Madsen, were invited by Meredith Vieira to appear on the *TODAY Show* in New York, where they discussed *Strength and Honour*. See Exhibit 6, BE.

33.     Plaintiff is the registered author and copyright owner of the screenplay for the Show, holding Registration No. TXu1-289-556 with the United States Copyright Office. See Exhibit 7, BE. Plaintiff is also the legal and beneficial owner of the Motion Picture's copyright, registered under Registration No. PA 1-642-297 with the U.S. Copyright Office (Exhibit 8, BE), and the registered author, writer, producer, director, and owner of the exclusive rights to the Show's copyright, registered under Registration No. PA 1-398-376 with the U.S. Copyright Office. See Exhibit 3, BE.

34.     On August 8, 2006, Plaintiff assigned certain rights in trust to *Maron Pictures Limited, t/a Maron Pictures Limited Liability Company and Maron Pictures* ("Maron Pictures") (Exhibit 9, BE), as formalized to an *Agreement to Acquire Literary Material* (Exhibit 10, BE), an *Agreement to Acquire Authorship Rights* (Exhibit 11, BE), and an *Agreement for Producer and*

1  *Director Services* executed on September 25, 2006. See Exhibit 12, BE. Collectively, these

2  agreements provided that Maron Pictures was obligated to pay Plaintiff €300,000.00 (Three

3  Hundred Thousand Euros), approximately $351,000.00 USD, no later than September 30, 2015,

4  for the grant of rights to become permanently assigned. In the event of non-payment, Plaintiff

5  expressly retained the right to revoke all rights previously granted to Maron Pictures. See Exhibits

6  10 at 7–8, 11 at 5–6, 12 at 6, BE.

7         35.     Plaintiff did not waive his "right to vary, change, alter, [or] modify" his property

8  and expressly retained the benefit of any provision of law known as "droit moral" or moral rights,

9  or any similar law in any jurisdiction worldwide. See Exhibits 11 at 5, 12 at 5, BE. The only

10 branded, award-winning display cover or label ever legally authorized by Plaintiff prominently

11 features the Show's lead actor, Michael Madsen, as the central figure of the poster. This design

12 complies with the *Screen & Advertising Statement of Restrictions* ("Advertising Restrictions"),

13 which requires the Motion Picture to "be referred to as an Irish film." See Exhibit 13, BE.

14        36.     The authorized cover also displays awards won by the Show at film festivals

15 worldwide, along with two quotes highlighting its status as an award-winning motion picture.

16 Additionally, the text and awards are presented in the colors of the Irish flag, the tricolor. See

17 Exhibit 1, BE. The only cover or label authorized by Plaintiff fully adhered to all contractual

18 credit obligations.

19        37.     In or around April 2009, Maron Pictures assigned to Mainsail LLC[2] the "sole and

20 exclusive right, license, and privilege to license to distribute" the fully finished, branded Show

21 only pursuant to 17 U.S.C. § 106(3). This assignment, made under a "Grant of Rights," was

22 limited to the "entire world, excluding North America and Ireland," in accordance with 17 U.S.C.

23 § 201(d). See Declaration ("Decl.") of Sam Eigen of Mainsail, dated April 7, 2020; Exhibit 14 at

24 2: ¶ 6, BE. The assignment granted only the exclusive right to distribute the Show, based on

25 Mainsail's verbal assurance to Plaintiff that it would recover the budget for the Show within five

---

[2] Case no. 4:20-cv-01523-YGR names defendants Mainsail LLC.; Shoreline Entertainment, Inc.; Sam Eigen; Morris Ruskin (collectively, referred herein as "Mainsail"). On June 4th, 2024, the district court entered Judgment for Mainsail, which is currently under appeal in the United States Court of Appeal for the Ninth Circuit. See Mainsail, Dkt. No. 151.

1   years.

2        38.    Mainsail also operates under the banner of Shoreline Entertainment, Inc.

3   ("Shoreline"). However, Maron Pictures did not transfer any rights under 17 U.S.C. §§ 106(1),

4   106(2), 106(4), 106(5), or 106(6) to any individual, entity, party, or corporation. Furthermore,

5   Plaintiff has never transferred his global rights as the author or his moral rights to any party,

6   corporation, entity, or individual, *ever*. See Exhibits 11–12 at 5, BE.

7        17 U.S.C. § 201(d) TRANSFER OF OWNERSHIP explicitly provides that:

8        "(1) The ownership of a copyright may be transferred in whole or in part by any

9        means of conveyance or by operation of law;" and

10       "(2) Any of the exclusive rights comprised in a copyright, including any

11       subdivision of any rights specified by section 106, may be transferred as provided

12       by clause (1) and owned separately. The owner of any *particular exclusive right is*

13       *entitled, to the extent of that right*, to all of the protection and remedies accorded to

14       the copyright owner by this title." (Emphasis added.)

15       39.    At the outset, Plaintiff provided Mainsail with the key art PSD file for the branded,

16   bona fide product, which included the only authorized award-winning cover, poster, and label to

17   be displayed publicly. This material was critical to preserving the public branding Plaintiff had

18   established. Additionally, Plaintiff provided Mainsail with 27 high-resolution photographs as

19   requested. See Exhibit 15, BE.

20       40.    On Mainsail's subsequent instruction, Maron Pictures, acting in good faith but

21   under false pretenses, sent all the master elements of the Show to Mainsail and Visual Data Media

22   Services, Inc. ("Visual Data") in Burbank, California. See Exhibit 16, BE; Supplement

23   Declaration ("Supp.Decl") of Daniel Pagan including Exhibit 1 – 5, BE2. This included the only

24   authorized trailer for the Show, which was designated for public display as an award-winning

25   motion picture. See Exhibit 17, BE.

26       41.    On or about May 16, 2009, Mainsail entered into a distribution license agreement

27   with Entertainment One UK Limited (formerly known as E1 Entertainment UK Ltd.) (the "EOne-

28   Mainsail Agreement"). See Exhibit 18, BE. The EOne-Mainsail Agreement expressly excluded

- 11 -

1    any territory within or including the United States, North America, Luxembourg, Germany, Italy,

2    or Spain. Furthermore, Plaintiff never authorized any version of the Show for use in the Republic

3    of Ireland.

4          42.    Initially, Maron Pictures granted Mainsail access solely to Deluxe Laboratories

5    Ltd. ("Deluxe") in the United Kingdom. However, on July 2, 2009, an amendment to the lab

6    authorization was executed, modifying the original authorization by crossing out specific items

7    after Mainsail's subsequent instructions to send the master elements to the U.S. This amendment

8    facilitated the Show's masters and master materials being sent directly to California and was

9    returned fully executed by Mainsail. See Exhibit 19, BE.

10         43.    The Show's masters were then sent to California based on false pretenses between

11   July, 2009 and August, 2009. See Exhibits 16 – 17, BE; Supp.Decl of Daniel Pagan including

12   Exhibits 1 – 5, BE2.

13         44.    In October 2009, Maron Pictures was compelled to involve its Irish legal counsel

14   due to Mainsail's refusal to provide sales information. Mainsail was subsequently informed by its

15   Irish legal counsel that the agreement it provided Maron Pictures had been issued under an

16   incorrect legal name due to a human error, which was never rectified. See Exhibit 20 at 6, BE.

17         45.    Between November 26 and December 26, 2009, Mainsail was further instructed to

18   terminate the EOne-Mainsail Agreement due to a breach of the agreed terms by EOne UK. See

19   Decl. of Olann Kelleher, BE2.

20         46.    In or around late January 2010, an unauthorized and unlicensed version of the

21   Show was commercially released in the Republic of Ireland in direct violation of the Mainsail and

22   Maron Pictures agreement. See Exhibit 14, BE. The unauthorized version of the film was pre-

23   marketed in Europe using counterfeit covers and a counterfeit trailer, rather than the bona fide

24   and only authorized cover and trailer provided by Maron Pictures to Mainsail. This conduct

25   constituted a violation of Plaintiff's exclusive rights under 17 U.S.C. §§ 106(1), 106(2), 106(3),

26   106(4), 106(5), 501, and 602. See Exhibit 21, BE. In response, Plaintiff issued a formal "cease

27   and desist" demand to Mainsail and EOne UK, instructing them to immediately halt the

28   distribution of "STRENGTH AND HONOUR" and to remove all counterfeit products from any

- 12 -

1    platforms or locations where the product's images or trailers were listed for sale. See Exhibit 22,

2    BE.

3        47.    In a subsequent and final warning email, Plaintiff reiterated to Mainsail and EOne

4    UK that they were "in breach of [their] contract and the contracts in place with [Plaintiff] and

5    Michael Madsen [the Show's lead actor]." Plaintiff demanded that they "remove all product until

6    the matter is resolved, as failure to do so will result in [Plaintiff] seeking substantial damages and

7    costs from [Mainsail] and E1 [Entertainment One]." See Exhibit 22A, BE. Tom Jarvis of EOne

8    UK was also copied on this correspondence, demonstrating EOne UK's awareness of the issues.

9    See Exhibits 22 – 22A, BE.

10        48.    The unauthorized covers violated Maron Picture's Advertising Restrictions, which

11    expressly outlined talent advertising restrictions, detailed cast contractual requirements, and

12    mandated that the Motion Picture be marketed "as an Irish film." See Exhibit 13, BE. Plaintiff

13    was particularly distressed by this breach, as he never assigned his "right to vary, change, alter,

14    [or] modify" the branded and copyright-protected Show cover, nor did he assign his moral rights

15    and right of the author to Maron Pictures or to any other individual, entity, corporations or

16    organization. Furthermore, Maron Pictures had provided Mainsail with the complete cast and

17    crew contracts as part of its delivery obligations, which included contractual credit block

18    requirements. See Exhibit 23, BE. At this juncture, Plaintiff concluded that Mainsail was acting in

19    bad faith, causing significant harm and undermining Plaintiff's rights and the integrity of the

20    Show.

21        49.    On February 9, 2010, Maron Pictures contacted EOne UK directly after its prior

22    "cease and desist" instructions to both Mainsail and EOne UK had been ignored. Maron Pictures

23    spoke with Poonam Sahota, Acquisitions Manager, and explained that the marketing materials

24    and artwork being used constituted clear violations of Plaintiff's contracts and rights, including

25    Plaintiff's copyrights, the Show's leading actor's contract, contractual credit obligations, and the

26    Advertising Restrictions. Maron Pictures demanded that EOne UK immediately "cease and

27    desist" its release of the unauthorized and unlicensed version of the Motion Picture in the

28    Republic of Ireland and the scheduled release in the United Kingdom on February 22, 2010. Later

- 13 -

that day, Poonam Sahota emailed Maron Pictures and falsely implied that Maron Pictures had

expressed approval for EOne UK to proceed with the marketing and artwork. See Exhibit 24, BE.

50.    On February 12, 2010, Maron Pictures emailed EOne UK again to explicitly state

that it was "not happy about proceeding with the current marketing and artwork" and reiterated

that such actions constituted "a clear breach of Mr. [Michael] Madsen's and [Plaintiff's]

contract." See Exhibit 25, BE. Less than an hour later, Plaintiff sent a follow-up email to EOne

UK, unequivocally stating, "[Maron Pictures] would like to make it very clear, [Maron Pictures]

never agreed on the phone that [Maron Pictures] would allow initial stock to go out." Plaintiff

further clarified, "[y]ou suggested that it should go out and that we could change it on the next

print run, but [Plaintiff] never agreed to it." See Exhibit 26, BE.

51.    Later that same day, Poonam Sahota of EOne UK responded via email, stating that

she had "copied Sam [Eigen], who represents Mainsail, LLC, [EOne UK's] contractual licensor."

Sahota further asserted that "contractually our release as is, is above par and the contract which

we entered into with Mainsail authorizes us to go ahead with the release." Additionally, Sahota

claimed that "Sam [Eigen] has informed us further that the actor agreement with Michael Madsen

[the Show's leading actor] indicates that Michael Madsen is to receive second position billing."

However, this assertion was factually incorrect. Michael Madsen is the leading actor of the Show

and was contractually entitled to first position billing. Moreover, not only did Mr. Madsen fail to

receive his contractual first billing, but he was also entirely omitted from the cover of the

unauthorized version. See Exhibits 13 and 21, BE.

52.    In response to Poonam Sahota's email at EOne UK, Maron Pictures highlighted

multiple inaccuracies in her statements, particularly her reference to Mainsail's alleged control

over the manner in which the Show would be marketed and sold. Specifically:

(a) Mainsail was provided with a fully finished, branded product;

(b) Plaintiff never assigned his "right of the author" or moral rights to any entity, and

        Mainsail were not allowed to make any changes or any re-arrangements without

        prior written approval by Maron Pictures, which Mainsail never sought;

(c) Plaintiff, as the author of the Motion Picture, explicitly retained his right to "vary,

- 14 -

1    change, alter, [or] modify" his property and did not waive the benefits of any

2    provision of law, including those known as the "droit moral" or moral rights, or any

3    similar law in any jurisdiction worldwide. Consequently, Maron Pictures could not

4    have assigned rights that it did not control or possess. See Exhibits 11 - 12 at 5, BE.

5    53.    Maron Pictures further clarified to EOne UK that its email contained factual

6    inaccuracies and that Mainsail had misrepresented the terms of Michael Madsen's contract.

7    Maron Pictures reiterated its request for an opportunity to speak directly with EOne UK, assuring

8    them that "[i]f [Maron Pictures] can come to a meeting of minds with E1 [EOne UK], then

9    [Maron Pictures] will do this, which is why [Plaintiff] would [like] a brief opportunity to speak to

10   [EOne UK]." See Exhibit 27, BE.

11   54.    On February 14, 2010, after receiving no response to its prior request, Maron

12   Pictures again emailed EOne UK, stating, "[c]an we schedule a call for maybe sometime

13   tomorrow?" Later that day, Ms. Sahota of EOne UK replied, indicating that she had met with Sam

14   Eigen of Shoreline (Mainsail) earlier that day and suggested that "the best and simplistic

15   approach for us all is for our communications to go through them." See Exhibit 28, BE.

16   55.    On or around February 22, 2010, EOne UK proceeded with a full release of the

17   unauthorized Motion Picture using an unlicensed cover that had been pre-advertised, including

18   distribution in the Republic of Ireland. See Exhibit 21, BE. To exacerbate an already distressing

19   situation for Plaintiff, EOne UK falsely marketed the unauthorized version of the Show as a

20   "Brit[ish] flick," engaging in offensive cultural appropriation and displaying anti-Irish sentiment

21   by misrepresenting the award-winning, indigenously Irish story. This conduct was deeply

22   upsetting to Plaintiff, an Irish writer, producer, and director who financed the Show. The story

23   centers on an Irish-American living in Ireland and is set among the Irish Traveler community.

24   The Show was filmed entirely in Ireland too. See Exhibit 29, BE.

25   56.    EOne UK's reckless actions violated the Screen and Advertising Statement of

26   Restrictions, which explicitly mandates "Strength and Honour shall be referred to, as an Irish

27   film." *See* Exhibit 13, BE.

28   57.    EOne UK further compounded its misconduct by advertising and including on the

1    counterfeit back cover a photograph of Vinnie Jones with a woman with pink hair—a photograph

2    that is not even from the Show. This blatant misrepresentation appeared to mock Plaintiff and his

3    work, demonstrating a lack of respect for the Show and its creators. See Exhibit 29, BE.

4         58.    Following EOne UK's February 14, 2010 communication to Plaintiff, all

5    subsequent emails from Maron Pictures to EOne UK were read but ignored. This disregard is

6    evidenced by the lack of response to multiple communications sent by Maron Pictures. See

7    Exhibits 30 – 33, BE.

8         59.    Throughout 2010, Maron Pictures made numerous requests for information from

9    Visual Data in Burbank, California. These requests were denied, with Visual Data citing its

10   contractual arrangements with Mainsail as the basis for its refusal. See Exhibit 34, BE. However,

11   as a professional courtesy, Plaintiff, through Maron Pictures, was provided with a 'masters report'

12   on October 16, 2010. This report detailed all the master elements for the Motion Picture and the

13   award-winning trailer that Plaintiff had supplied to Mainsail and Visual Data. See Exhibit 17;

14   Exhibit 35, BE.

15        60.    Notably, Plaintiff personally financed the creation of various master formats of his

16   Show, derived from his primary digital internegative, thereby establishing them as his personal

17   property. See Exhibits 36 – 41, BE.

18        61.    On December 17, 2010, Maron Pictures again attempted to contact EOne UK,

19   stating there was "a major dispute with Shoreline Entertainment." Maron Pictures reiterated that

20   EOne UK had been "aware of some of [the] complaints since the beginning of the year, including

21   the unauthorized covers and trailer which violate [Plaintiff's] contracts, amongst other things."

22   Maron Pictures also informed EOne UK of the ongoing situation as a professional courtesy,

23   noting that it had "had no accountability in any manner from [Mainsail/Shoreline

24   Entertainment]." Despite this effort, the email was read but entirely ignored. See Exhibit 33, BE;

25   Exhibit 42, BE.

26        62.    Ten years of litigation ensued between Maron Pictures and Mainsail. Following

27   multiple attempts at mediation and arbitration, Maron Pictures filed suit against Mainsail in the

28   Los Angeles Superior Court in 2013. Despite being made aware of the incorrect name error,

- 16 -

1    Maron Pictures' U.S. counsel still filed the state court case using the incorrect name. See Exhibit

2    43.

3        63.    Separate to Plaintiff's Show and brand being financially destroyed by Defendant's

4    unauthorized and unlicensed counterfeit marketing, the unauthorized version of the film still

5    turned millions of dollars globally and enjoyed success all over the world. However, because of

6    the counterfeit marketing used, the unauthorized film did not take a fraction of the revenue that it

7    should have realized with the branded, award-winning materials. See Exhibits 1 – 6, 75, BE.

8                    **TERMINATION AND REVOCATION NOTICES (2015)**

9        64.    Despite the revenues the unauthorized version of the film did turn globally,

10   Plaintiff was not paid his consideration as per the Maron Pictures agreements in accordance with

11   his *Agreement to Acquire Literary Material* (Exhibit 10 at 7–8, BE), *Agreement to Acquire*

12   *Authorship Rights* (Exhibit 11 at 5–6, BE), and *Agreement for Producer and Director Services*

13   (Exhibit 12 at 6, BE) because Maron Pictures was never paid one brown cent or received a single

14   royalty report from Mainsail LLC, or from any other company commercially exploiting the

15   unauthorized version of the Motion Picture either. See Exhibit 43 at 6 [5], BE.

16       65.    After consulting with its U.S. counsel, Maron Pictures was advised to issue a

17   termination notice reflecting the same trading name as filed in the state court proceedings to avoid

18   any potential prejudice. Then, in accordance with this advice, on September 30, 2015, Maron

19   Pictures formally instructed its Irish counsel to issue the termination notice to Mainsail. See

20   Exhibit 44, BE.

21       66.    On the **1st day of October, 2015**, and before any state court case orders were

22   issued, *Plaintiff also sent a formal 'Notice of Contract Revocation' to Maron Pictures revoking*

23   *all rights* he had assigned to it as per clauses 5 and 4 of his Agreements, respectively.

24   See Exhibits 10 at 7–8, 11 at 5–6, 12 at 5–6, and 45 at 2–3, all from BE; See also Decl. of Niall

25   Byrne at 2: ¶ 4; Decl. of D. Barrie Graham; Decl. of Trevor Leacy at 2: ¶ 7 and Exhibit 4,

26   attached thereto; Decl. of Michael Hayes at 2: ¶ 3, BE2.

27       67.    Further, under the 'Assignment' clauses 14 and 11 of his Agreements,

28   respectively, it states "Purchaser may assign and transfer this agreement or all or any part of its

                                    - 17 -

1    rights hereunder to any person, firm or corporation without limitation, and *this Agreement shall*

2    *be binding upon* and inure to the benefit of *the parties hereto and their successors,*

3    *representatives and assigns* forever." (Emphasis added.) See Exhibits 10 at 13, 11 at 10, 12 at 10,

4    BE. Plaintiff's rights also reverted back to him retroactively. See Exhibit 9, BE.

5    <div align="center">**MARON PICTURES STATE COURT PROCEEDING AND APPEAL**</div>

6         68.     In July 2016, the Superior Court ruled stated Mainsail ceased all licensing

7    activities following Plaintiff's cease-and-desist request in 2010. The Superior Court further ruled

8    Maron Pictures *never* completed delivery of the film to Mainsail, which Plaintiff still disputes.

9    Consistent with the Superior Court's finding, Mainsail never paid Maron Pictures for use of the

10   unlicensed version of the film, which it alleges it never used after Plaintiff's letter in 2010. See

11   Exhibit 43 at 6 [5], BE.

12        69.     On November 10, 2016, Plaintiff also formally and directly notified Richard L.

13   Charnley, counsel for Mainsail that he had served a notice of revocation on Maron Pictures in

14   2015 and had formally revoked all rights, licenses and privileges granted to Maron Pictures for

15   the Show for failure to pay his consideration under clause 4 and 5 of his contracts. See Decl. Niall

16   Byrne at 2, 3: ¶ 7, BE.

17        70.     On December 1, 2016, Plaintiff met with a copyright solicitor on a personal basis,

18   Mark Stafford, partner of Lee & Thompson LLP in London, who had also been sent the 'Notice

19   of Contract Revocation' that Plaintiff had sent Maron Pictures on October 1, 2015, and sought

20   legal advice in relation to same. See Exhibit 46, BE.

21        71.     On December 9, 2016, the State Court then granted Judgment in favor of Mainsail

22   LLC, Shoreline Entertainment, Inc. and Sam Eigen and denied all Maron Pictures claims. See

23   Exhibit 47, BE. Maron Pictures subsequently appealed this ruling.

24        72.     Contrary to the State Court's ruling, the unlicensed version of the Show still

25   continued to be performed around the world in 2016 with a counterfeit cover and trailer under the

26   continuing violation doctrine. See Exhibit 48, BE. Plaintiff's copyrights were also being infringed

27   globally, as he had never assigned his rights and moral rights to any individual, party, corporate,

28   associate, entity or otherwise *ever*, and were *not subject to any agreement*. See Exhibits 49 – 51,

<div align="center">- 18 -</div>

1    BE.

2        73.    In 2017, Plaintiff filed a supplemental registration with the U.S. Copyright Office

3    amplifying the correct authorship and ownership information in the original registration from

4    "Maron Pictures" to himself. See Exhibit 3, BE.

5        74.    In or around February 2018, Maron Pictures was then sent a random EOne UK

6    royalty report (Exhibit 52, BE), which Plaintiff believes was an error showing Entertainment One

7    had collected GBP £354,428.75 (approximately $505,512 USD)[3] from the unauthorized version

8    of Plaintiff's Motion Picture. See Exhibit 53, BE.

9        75.    The email also stated "[i]f the title is in overage, please provide an invoice for the

10   amount due to you." See Exhibit 52, BE. The account did show an overage of GBP £7,815.74

11   (approximately $11,149.15 USD). See Exhibit 53, BE. Plaintiff found this bizarre, considering

12   when he had previously sought information and accounting years earlier, he was told that EOne

13   UK's contractual licensor was Mainsail and EOne UK had *nothing* to do with Maron Pictures.

14       76.    Maron Pictures unsuccessfully appealed despite the appeal court finding no

15   evidence "for the court to find nondelivery." See Exhibit 54, BE. It further found "Paragraph

16   15.4.1 of the SAA gives the sales agent the right to furnish any undelivered items and to recover

17   costs from licensor." See Exhibit 54 at 29, BE. Thus, *delivery was completed*. Maron Pictures

18   also sought review by the Supreme Court, which was denied in 2019. See Exhibit 55, BE

19       77.    Defendants were also still having financial benefit of Plaintiff's copyrights and its

20   required metadata in 2019, and still using an unauthorized and unlicensed version of Plaintiff's

21   Show. *See* Exhibits 56 – 61, BE.

22       78.    Defendants continued to falsely advertise the award-winning, Irish Motion Picture,

23   as a 'British flick,' violating Advertising Restrictions explicitly mandating it to be identified as an

24   "Irish film." See Exhibit 13, BE. These ongoing misrepresentations, under the continuing

25   violation doctrine, exacerbates cultural and historical sensitivities, given the historical context of

26   Britain's oppressive and violent colonial history in Ireland, making Defendants' conduct not only

27

28   _____
     [3] Based on an exchange rate of 1.42 in February, 2018

1    inaccurate but deeply offensive.

2        79.    Defendants' reckless actions also did enormous financial damage to Plaintiff's

3    branded Show globally and massive damage to Plaintiff's reputation personally with his family,

4    friends and with his countrymen. In fact, Plaintiff was turned into a social pariah in his own

5    country over their actions.

6    **DISCOVERY OF UNAUTHORIZED MOTION PICTURE COPYING OF MASTERS**

7        80.    In or around early December 2019, Plaintiff discovered and obtained verifiable

8    evidence, for the first time, through an official confirmation from Visual Data, that his copyright-

9    protected Motion Picture masters had been unlawfully copied and distributed within the State of

10   California by Visual Data. This conduct violated Plaintiff's exclusive rights under 17 U.S.C. §§

11   106(1), 106(2), 106(3), 106(4), 106(5), 501, and 602, and occurred without Plaintiff's knowledge

12   or consent. See Exhibits 62 – 63, BE.

13       81.    Visual Data's unauthorized copying and distribution led to the creation of

14   counterfeit and illicit copies of Plaintiff's work, which were subsequently acquired by numerous

15   companies worldwide. These companies, including Defendants, have since engaged in the

16   ongoing commercial exploitation of an unlicensed and unauthorized version of Plaintiff's

17   copyright-protected screenplay and Motion Picture, constituting a continuing violation of

18   Plaintiff's exclusive rights. See Exhibit 64, BE.

19       82.    Additionally, because these counterfeit and illicit copies were created in the State

20   of California, every subsequent copy derived from them is likewise unlawful. The copyrighted

21   Motion Picture masters constitute 'records' from which the work could be 'reproduced,' and the

22   act of creating such copies in California without the owner's knowledge or consent constitutes a

23   tortious violation of Plaintiff's exclusive rights under federal copyright law. See Exhibit 64, BE;

24   see also Decl. of Mia Jones, BE.

25       83.    Following the Visual Data revelation in December 2019, Plaintiff contacted EOne

26   UK, Apple and Google who had the unauthorized version of the Show available for purchase in

27   2019. See Exhibits 50 – 55, BE. It had also been purchased in 2019 directly from Apple (Exhibit

28   61, BE), Google (Exhibits 58 – 60, BE) and YouTube. See Exhibits 56 – 57, BE.

84.     Plaintiff formally notified Defendants in writing that their actions constituted copyright infringement under the Federal Copyright Act, 17 U.S.C. § 504, and asserted his entitlement to recover actual damages and profits arising from their unlawful conduct. In this correspondence, Plaintiff issued a formal demand for payment in the amount of $9,220,235. See Exhibit 65, BE. To substantiate his claim, Plaintiff attached a certified copy of his Certificate of Registration from the United States Copyright Office (PA 1-398-376), certified by Comyn, Kelleher, Tobin Solicitors, along with a letter from his Chartered Accountants and Registered Auditors, Moore, which confirmed his actual costs and damages totaling $8,753,310. See Exhibit 66, BE.

85.     On January 2, 2020, Erin from Content & Internet Services Legal, Apple Inc., contacted Plaintiff regarding Apple's unauthorized use of Plaintiff's copyright-protected Motion Picture. Apple disclosed that the Motion Picture had been provided to them by Entertainment One, in global violation of Plaintiff's copyrights. This communication was the first time Plaintiff discovered that "Entertainment One US LP"[4] ("EOne US") was the entity that had supplied the

---

[4] At all relevant times. EOne US was a wholly owned subsidiary, affiliate, or agent of EOne UK, operating under its direction and control in connection with the conduct described herein. During the events giving rise to this Complaint, EOne US was an active and separate legal entity but acted at the behest and for the benefit of EOne UK in matters related to the Motion Picture. Specifically, EOne UK exercised direct oversight and decision-making authority over EOne US's operations regarding the Motion Picture, including the wrongful acts alleged herein.

The wrongful conduct of EOne US, as described in this Complaint, was carried out pursuant to policies, practices, and directives established by EOne UK. Although EOne US was sold in 2023 and is no longer affiliated with EOne UK, based on information previously provided to the district court, EOne UK remains liable for the actions of EOne US during the period when EOne US operated as its subsidiary, affiliate, or agent. This liability arises from EOne UK's pervasive control over EOne US and its direct benefit from the wrongful conduct undertaken by EOne US regarding the unauthorized use and exploitation of the Motion Picture.

Throughout the relevant period, EOne US functioned as the alter ego of EOne UK. EOne UK disregarded corporate formalities, commingled funds, and exercised pervasive control over EOne US's operations, particularly concerning decisions and actions related to the Motion Picture, such that the two entities were indistinguishable. From approximately 2010–2011 until 2023, EOne US, acting under the direction and control of EOne UK, engaged in the wrongful conduct described herein as part of EOne UK's broader business strategy. These actions were integral to

1    unauthorized version of his Motion Picture to Apple. See Exhibit 67, BE.

2        86.    On January 8, 2020, Simon Osborn, Head of Legal and Business Affairs,

3    Distribution for EOne UK, corresponded with Plaintiff and stated that "Entertainment One were

4    granted all linear distribution rights, which included 'all means of download and streaming,' in

5    this film by way of an agreement with Mainsail LLC." Osborn further confirmed that EOne had

6    authorized the distribution of the Motion Picture to "the likes of iTunes, Google, and other digital

7    platforms" and requested assurances that "no further action will be taken against these platforms."

8    See Exhibit 68, BE.

9        87.    On January 10, 2020, Plaintiff responded to Osborn, attaching the 'Entertainment

10   One Demand Letter,' which had been issued to Entertainment One Ltd. via their Santa Monica,

11   California office on December 12, 2019. In this correspondence, Plaintiff reiterated his claims of

12   copyright infringement and confirmed that lawsuits against multiple companies, including

13   Entertainment One US LP, were being prepared for their unauthorized use of his copyrighted

14   Motion Picture. See Exhibit 69, BE.

15       88.    On February 10, 2020, EOne emailed Plaintiff and said that they had discussed the

16   matter with *their* licensor, Mainsail LLC, and that they are not in default. See Exhibit 70, BE.

17       89.    The same day, Kathlyn Querubin, Litigation Counsel for Google LLC also

18   contacted Plaintiff and confirmed that the film was made available on the Google Play platform

19   for distribution to Google under license from Entertainment One. See Exhibit 71, BE.

20                          **DISTRICT COURT LEGAL PROCEEDINGS**

21       90.    On March 2, 2020, Plaintiff filed a complaint in the United States District Court,

22   Northern District of California, against Entertainment One US LP.; Entertainment One Licensing

23   US, Inc.; Entertainment One Ltd.; E1 Entertainment UK Ltd. (the 2020 case shall be referred to

24   herein as "First EOne"). Plaintiff asserted claims for: (1) Copyright Infringement; (2)

25   Infringement of Right of the Author; (3) Trafficking in illicit labels, or packaging; (4)

26   Conversion. See *Case No*. 4:20-cv-01527-YGR, Dkt. No. 1.

27   _____

28   EOne UK's global operations and were conducted for its direct financial and strategic benefit.

91.     Plaintiff also filed complaints against Mainsail; Google[5] et al. and Apple[6] et al., which are presently before the United States Court of Appeals for the Ninth Circuit.

92.     On April 7, 2020, in the Mainsail case, Sam Eigen, an executive with Mainsail LLC and Shoreline Entertainment, Inc., provided sworn testimony admitting that Mainsail/Shoreline was authorized to represent the Motion Picture exclusively in territories "outside of the United States and Ireland" and that they "never represented the Film in either the United States or Ireland." See Declaration of Sam Eigen, dated April 7, 2020; Exhibit 14: ¶ 6, BE.

93.     On April 8, 2020, Mia Jones, Director of Client Services at Visual Data confirmed that Mainsail/Shoreline Entertainment authorized and gave instruction to Visual Data to copy and ship the Film, as per the list of assets sent to Plaintiff on December 16, 2019.  See Exhibit 72, BE; Decl. of Mia Jones: ¶ 7, BE2.

94.     On April 23, 2020, First EOne was reassigned to Hon. Judge Yvonne Gonzalez Rogers. See *Case No.* 4:20-cv-01527-YGR, Dkt. No. 27.

95.     On April 30, 2020, First EOne filed a Corporate Disclosure Statement stating that Entertainment One U.S. LP was wholly owned by Earl Street Capital Inc., which was ultimately owned by Hasbro, Inc. However, this statement was false, as Entertainment One U.K. Holdings Limited had sold its 100% holding in Entertainment One US Holding Inc. to One Hasbro UK Holdings Limited on March 2, 2020. See *Case No.* 4:20-cv-01527-YGR, Dkt. No. 33 at 2; See also Exhibits 73 – 74, BE.

96.     On May 1, 2020, First EOne filed a Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction and Failure to State a Claim. See *Case No.* 4:20-cv-01527-YGR,

---

[5] Case no. 4:20-cv-01525-YGR named as defendants Google LLC. and YouTube LLC (referred herein as "First Google".) On June 4th, 2024, the district court entered Judgment for First Google, which is currently under appeal in the United States Court of Appeal for the Ninth Circuit. See First Google, Dkt. No. 198.

[6] Case no. 4:20-cv-01534-YGR named as defendants Apple Inc.; Apple Inc. d/b/a iTunes; and Apple Inc. d/b/a iTunes Store (referred herein as "First Apple".) On June 4th, 2024, the district court entered Judgment for Mainsail, which is currently under appeal in the United States Court of Appeal for the Ninth Circuit. See First Apple, Dkt. No. 186.

1  Dkt. No. 34. Plaintiff opposed the motion on May 15, 2020, and First EOne filed a reply on May

2  22, 2020. See *Case No.* 4:20-cv-01527-YGR, Dkt. Nos. 39, 42.

3      97.    On May 11, 2020, in an article that appeared in The Independent in the United

4  Kingdom, it noted that Michael Madsen considers the Motion Picture "to be his strongest work"

5  and also "the one film Madsen made that earned compliments from his father, who died in 2015."

6  See Exhibit 75 at 8 [7], BE.

7      98.    On August 7, 2020, the Court issued an Omnibus Order in the First EOne's motion

8  to Dismiss. The Court **GRANTED IN PART** and **DENIED IN PART** the motion, permitting Plaintiff

9  leave to amend the complaint after a short period of limited jurisdictional discovery. See *Case no.*

10  4:20-cv-01527-YGR, *Omnibus Order*, Dkt. No. 52; or Exhibit 76, BE.

11  <center>**EONE'S JURISDICTIONAL DISCOVERY**</center>

12      99.    In its Omnibus Order, the Court's authorized limited discovery to address the

13  following specific issues:

14      (1) whether Entertainment One US LP or another foreign defendant provided copies of

15      the Film to Apple, Google, and YouTube in this District;

16      (2) whether any licensing activity took place in this District;

17      (3) the corporate structure and role in domestic and foreign distribution of the Film by

18      the Entertainment One defendants; and

19      (4) whether Entertainment One US LP acted as an agent of any parent company in

20      providing the Film to Apple, Google, and YouTube. See *Case no.* 4:20-cv-01527-YGR,

21      *Omnibus Order*, Dkt. No. 52; or Exhibit 76 at 23, BE.)

22      100.    In or around October 8, 2020, First EOne provided ambiguous and misleading

23  information during the limited jurisdictional discovery. See Exhibit 77, BE. First EOne also

24  supplied an agreement between Entertainment One U.S. LP and iTunes S.a.r.l. identified as

25  EONE_00000086 – EONE_00000121 (the "First Apple Agreement") that they alleged the

26  unauthorized version of his film was licensed through in February, 2010, despite Plaintiff's prior

27  cease-and-desist instructions to EOne UK. See Exhibit 1, BE3

28      101.    Plaintiff was also informed and only discovered that the unauthorized version of

<center>- 24 -</center>

1    the film was distributed through a separate agreement between Entertainment One U.S. LP.,

2    Google Inc. [LLC] and Google Ireland Limited identified as EONE_00000122 –

3    EONE_00000134 (the "First Google Agreement") in or around June 2012. See Exhibit 2, BE3.

4    EOne admitted to this agreement but did not initially provide supporting documentation. See

5    Exhibit 77 at 10, BE.

6          102.    The First Apple Agreement applied only to video content within the United

7    Kingdom, while Plaintiff's evidence showed that the unauthorized version of his Show was made

8    available in the Republic of Ireland through Apple Inc. d/b/a iTunes Store. See Exhibits 48 at 4,

9    61, BE.

10         103.    Despite providing misleading responses during the limited jurisdictional discovery,

11    First EOne unequivocally stated in its "Response to Interrogatory No. 2: (No. 4)," signed and

12    verified by Simon Osborn: "eOne responds that none of the eOne Defendants [including

13    Entertainment One UK Limited and Entertainment One US LP] engaged in licensing activity

14    concerning the Film in the Northern District of California, or in any other federal judicial district

15    in California." See Exhibit 77 at 7: 24–26, BE.

16         104.    On October 28, 2020, Plaintiff filed the First Amended Complaint ("FAC") in

17    First EOne. See *Case no.* 4:20-cv-01527-YGR, Dkt. No. 55. First EOne moved to dismiss the

18    FAC for Lack of Personal Jurisdiction and Failure to State a Claim on November 18, 2020. See

19    *Case No.* 4:20-cv-01527-YGR, Dkt. No. 56.

20         105.    On December 10, 2020, the Court ordered First EOne to provide a copy of the

21    Google Agreement to Plaintiff. See *Case no.* 4:20-cv-01527-YGR, *Order*, Dkt. No. 62; or Exhibit

22    78, BE. This was also further to Plaintiff requesting that First EOne provide "ALL

23    DOCUMENTS" in the Jurisdictional Discovery – Requests for Production of Documents, which

24    First EOne were served on September 2, 2020. See Exhibit 79 at 8–9, BE.

25         106.    On December 22, 2020, First EOne provided Plaintiff with the First Google

26    Agreement, which it claimed was the instrument used to transfer the unauthorized version of

27    Plaintiff's Motion Picture to Google. First EOne also filed a statement with the Court confirming

28    that the First Google Agreement had been provided to Plaintiff. See *Case No.* 4:20-cv-01527-

1    YGR, Dkt. No. 63.

2        107.    Following supplemental briefing, the Court issued an Order on April 8, 2021,

3    granting First EOne's Motion to Dismiss for *lack of personal jurisdiction*. See *Case no*. 4:20-cv-

4    01527-YGR, Dkt. No. 77. Specifically, the Court rejected Plaintiff's argument that a forum

5    selection clause in the Google Agreement created personal jurisdiction. See *Case no*. 4:20-cv-

6    01527-YGR, Dkt. No. 77 at 2.

7        108.    Plaintiff relied on First EOne's verified ambiguous and misleading responses

8    during the proceedings, but which unequivocally stated that none of EOne defendants engaged in

9    licensing activity concerning the Film in the Northern District of California, or in any other

10    federal judicial district in California; and the supporting documents the EOne defendants

11    provided. See Exhibit 77 at 7: 24–26, BE.

12        109.    The dismissal of Plaintiff's claims in the First EOne prior action was based on

13    jurisdictional issues and EOne's misleading representations. The facts form part of the basis for

14    the present action and demonstrate EOne's ongoing misconduct.

15        110.    On June 10, 2021, in First Google, the district court granted an Order for Plaintiff

16    to submit three pre-discovery interrogatories to YouTube LLC and Google LLC. See First

17    Google, Dkt. No. 58; or Exhibit 80, BE.

18        111.    Between July 6, 2021, and July 15, 2021 Plaintiff served First Apple with his first

19    set of Interrogatories, Requests for Admissions and Requests for Production of Documents. See

20    Exhibit 81, BE. During the same period, Plaintiff also served First Google with his first set of

21    Interrogatories, Requests for Admissions and Requests for Production of Documents. See Exhibit

22    82, BE.

23        112.    On July 12, 2021, First Google provided Plaintiff with its Objections and

24    Responses to Plaintiff's Pre-Discovery Interrogatories Nos. 1-3. In its verified responses, Google

25    failed to provide any substantive additional information and instead referred Plaintiff to the

26    previously produced First Google Agreement by Entertainment One US LP, asserting that the

27    agreement had already been provided to Plaintiff. See Exhibit 83 at 9: 10–12, BE.

28        113.    On October 6, 2021, Plaintiff discovered and obtained verified evidence that

- 26 -

1  Mainsail did not provide a counterfeit cover to Defendants for use with their unauthorized version

2  of Plaintiff's Show. This evidence confirms that EOne UK independently created the counterfeit

3  cover on its own accord. See Exhibit 84 at 6, ¶ 5, BE. Additionally, Mainsail verified that it did

4  not direct EOne UK "to market the F[ilm] as a 'Brit Flick'". See Exhibit 84 at 9, ¶ 11, BE.

5      114.    Based on this evidence, Plaintiff asserts that EOne UK unilaterally decided to

6  market the unauthorized version of the Show in a manner that constitutes offensive cultural

7  appropriation and anti-Irish sentiment. This conduct devalued and misrepresented the branded,

8  award-winning, Irish story by falsely labeling the unauthorized version of the Motion Picture as a

9  "Brit Flick." EOne UK acted in flagrant disregard of Plaintiff's rights and heritage, exhibiting

10  racial discrimination, malice, oppression, and willful violations of the Advertising Restrictions.

11  See Exhibit 13, BE.

12      115.    Plaintiff, an Irish citizen, finds Defendants' false advertising of his award-winning

13  Irish Show—a creative work entirely conceived, developed, and rooted in Irish culture—as a

14  "British flick" to be profoundly offensive and degrading. This misrepresentation is especially

15  appalling given Britain's history of colonial oppression in Ireland, which still stirs strong

16  emotions among Irish citizens and communities worldwide.

17      116.    EOne UK's actions, including their willful disregard for Plaintiff's rights, heritage,

18  and explicit instructions since 2010, have caused Plaintiff significant reputational damage and

19  emotional distress. Despite being directly informed by Plaintiff that their conduct violated his

20  contractual rights, copyrights, credit obligations, Advertising Restrictions, and exclusive rights,

21  EOne UK knowingly and recklessly continued its unlawful behavior under the continuing

22  violation doctrine.

23      117.    In late 2021, Plaintiff then discovered that EOne UK DVDs of the unauthorized

24  version of the Motion Picture were being unlawfully distributed and sold in North America,

25  Germany, Italy, and Spain without Plaintiff's knowledge or consent. Plaintiff alleges that EOne

26  UK authorized and facilitated the illegal distribution of these DVDs, identified under Amazon

27  Standard Identification Number ("ASIN") B002UEX15U, through Amazon's distribution

28  network. EOne UK profited from these sales as the manufacturer of the DVDs. See (i) Supp.Decl.

1    of D. Barrie Graham including attached Exhibits; (ii) Decl. and Supp.Decl of Paul Roberts

2    including Exhibits; (iii) Decl. and Supp.Decl of Kimora R. Pope including Exhibits; (iv) Decl. of

3    Jerry Curtis including attached Exhibits; (v) Third Decl. of D. Barrie Graham including attached

4    Exhibits; and (vi) Supp.Decl of Mark Mahon including attached Exhibits, all from BE2.

5        118.    On November 1, 2021, the unauthorized version of the Show, including counterfeit

6    cover and packaging, was purchased on DVD from Amazon.com through Amazon Export Sales

7    LLC (collectively, Amazon.com; Amazon.com Services LLC; Amazon Export Sales LLC

8    referred herein as "Amazon") in the territorial boundaries of the United States of America. The

9    DVD was identified under ASIN B002UEX15U. See Supp.Decl. of D. Barrie Graham at 2, ¶ 3,

10   BE2.

11       119.    The declarant's Platinum Visa Card ending in 5622, recorded the purchase of the

12   DVD in U.S. ["USD"] dollars within the territorial boundaries of the United States. The

13   transaction was documented as originating from "AMZN Mktp US" by the declarant's bank. See

14   Supp.Decl. of D. Barrie Graham at 14, BE2.

15       120.    On November 3, 2021, based on information Plaintiff discovered on October 6,

16   2021, Plaintiff filed a further complaint against Apple Inc., Entertainment One UK Limited and

17   Entertainment One US LP (the 2021 case shall be referred to herein as "Second EOne"), and

18   Google LLC. Plaintiff sought relief for: (1) Infringement of Right of the Author in Violation of 17

19   U.S.C. § 106; (2) Interference with Plaintiff's Rights in Violation of the Berne Convention

20   Implementation Act of 1988; (3) Fraud (against Second EOne only); (4) Civil Conspiracy (against

21   Second EOne only); (5) Negligent Infliction of Emotional Distress; and (6) Intentional Infliction

22   of Emotional Distress. See *Case no.* 4:21-cv-08562-YGR, Dkt. No. 1.

23       121.    On November 15, 2021, Visual Data again confirmed their vault records indicate

24   all the master assets supplied were logged in under Maron Pictures. See Exhibit 85, BE.

25       122.    On December 29, 2021, Google were still using the unauthorized cover and

26   counterfeit trailer for the Motion Picture and still referring to the award-winning, Irish film as a

27   "Brit flick" on Google. See Exhibit 86, BE.

28       123.    On January 4, 2022, YouTube were still using a counterfeit trailer for the

- 28 -

1   unauthorized version of the Show and still referring to the award-winning Irish film, as a "Brit

2   flick" on YouTube. See Exhibit 87, BE.

3       124.    On January 7, 2022, Apple were still using the unauthorized cover for Plaintiff's

4   Irish, award-winning Motion Picture and still advertising it as a "Brit flick" on Apple iTunes

5   player. See Exhibit 88, BE.

6       125.    Defendants Apple, Google, and Second EOne subsequently filed motions to

7   dismiss on February 1, 2022. Second EOne also filed a Motion for Sanctions on February 2,

8   2022. See *Case No.* 4:21-cv-08562-YGR, Dkt. Nos. 28, 31, 33, 36.

9       126.    Plaintiff opposed motions to dismiss in Second EOne, providing evidence that

10  both Apple and Google continued to use the counterfeit materials advertising the unlicensed

11  version of the Show as a "Brit flick" in late 2021 and early 2022. See *Case No.* 4:21-cv-08562-

12  YGR, Dkt. Nos. 47-1, 48-4, incl. Exhs. 1A to 3A.

13      127.    On March 9, 2022, the official Strength and Honour Facebook page, which had

14  displayed the only legally authorized trailer since 2009, began showing an error message: "Sorry,

15  we're having trouble playing this video." This issue remains unresolved. Plaintiff asserts that

16  Defendants' actions contributed to this disruption, as Plaintiff had brought this page to the Court's

17  attention in a letter from Barry Kelleher, Solicitor at Comyn, Kelleher, Tobin Solicitors in

18  Ireland, submitted with Plaintiff's Opposition to Second EOne's Motion for Sanctions on

19  February 16, 2022. See *Case No.* 4:21-cv-08562-YGR, Dkt. No. 49-6; See also Exhibit 89, BE.

20      128.    On July 5, 2022, the Court granted Second EOne's Motion to Dismiss but allowed

21  Plaintiff leave to amend the complaint to include claims for copyright infringement and

22  trafficking in counterfeit labels or packaging, based on the allegations included in the proposed

23  declaration at Dkt. No. 55. See *Case No.* 4:21-cv-08562-YGR, Dkt. No. 70; See also Exhibit 90,

24  BE. Second EOne's motion for sanctions was also granted in part, and Plaintiff was ordered to

25  pay $200.00 to Second EOne within seven (7) business days. See *Case No.* 4:21-cv-08562-YGR,

26  Dkt. No. 70 at 5, See also Exhibit 90 at 6 [5], BE.

27      129.    As a result of Second EOne's false representations to the Court, Plaintiff was

28

1  unjustly subjected to financial sanctions, which were subsequently paid in full. See Exhibit 91,

2  BE. These sanctions, imposed based on Defendant EOne's deceitful conduct, represent yet

3  another act of oppression and bad faith by Defendant EOne, further compounding the harm

4  inflicted upon Plaintiff.

5      130.   The Court simultaneously dismissed Plaintiff's claims against Apple and Google

6  in Second EOne with prejudice due to claim-splitting, litigation privilege and preemption by the

7  Copyright Act due to case nos. 4:20-cv-01525, 4:20-cv-1534-YGR being already before the

8  Court. See *Case No.* 4:21-cv-08562-YGR, Dkt. No. 71.

9      131.   On July 19, 2022, Plaintiff filed an amended complaint in Second EOne. See *Case*

10  *No.* 4:21-cv-08562-YGR, Dkt. No. 73.

11     132.   Plaintiff alleges that EOne knowingly sold counterfeit DVDs to Amazon and

12  its affiliates, profiting from unauthorized global sales despite prior cease-and-desist instructions

13  issued in 2010. Plaintiff also provided substantial evidence of counterfeit DVDs of the

14  unauthorized version of the Motion Picture being distributed, and sold through Amazon and its

15  affiliates:

16          a.  On February 25, 2022, a new Entertainment One DVD with a counterfeit cover was

17              purchased from Amazon.com in California. See Decl. of Paul Roberts, BE2.

18          b.  On August 2, 2022, a counterfeit DVD was purchased in Germany through

19              Amazon.de, listing "Entertainment One" as the manufacturer. See Third Decl of D.

20              Barrie Graham, BE2.

21          c.  On August 9, 2022, a counterfeit DVD was purchased in California through

22              Amazon.com. See Decl. and Supp.Decl of Kimora R. Pope, BE2.

23          d.  On August 26, 2022, counterfeit DVDs were purchased in Spain and Germany,

24              further confirming unauthorized distribution. See Decl. of Jerry Curtis and Third

25              Decl. of D. Barrie Graham, BE2.

26          e.  These DVDs were marketed under ASIN: B002UEX15U, with EOne retaining

27

28

- 30 -

1    control over the listing, territories, and jurisdictions in which the DVDs could be

2    sold. See Supp.Decl. of D. Barrie Graham, Decl. of Paul Roberts, and Decl. of

3    Kimora R. Pope, BE2.

4    133.    In support of Second EOne's further motion to dismiss, Simon Osborn submitted

5    a sworn declaration asserting that "eOne has never sold, marketed, or distributed DVD copies of

6    the Film using Amazon.com's website in the United States, nor has Entertainment One U.S. LP...

7    or any other entity done so on eOne's behalf." See *Case No.* 4:21-cv-08562-YGR, Dkt. No. 74-1

8    at ¶ 2; See also Exhibit 92 at 3, BE.

9    134.    On September 2, 2022, the Court granted Second EOne's Motion to Dismiss for

10   Lack of Personal Jurisdiction, concluding that Plaintiff had failed to meet the burden of

11   demonstrating sufficient contacts between Second EOne and the forum state to confer

12   jurisdiction. See *Case No.* 4:21-cv-08562-YGR, Dkt. Nos. 78, 79.

13   135.    Plaintiff contends that EOne made further false representations to the Court,

14   including:

15      •   Denying involvement in the marketing of "Strength and Honour" using

16          Amazon.com, and that EOne had never "granted any license or sublicense to,

17          Amazon.com" to sell, market, or distribute DVD copies of the unauthorized

18          version of "Strength and Honour". See Exhibit 92 at 3: ¶ 3, BE.

19   136.    These misrepresentations deprived Plaintiff of a fair adjudication and violated due

20   process. The procedural rulings in Second EOne did not address the substantive merits of

21   Plaintiff's claims against EOne. Plaintiff incorporates these further facts to provide necessary

22   context for this present action, which arises from ongoing and escalating wrongs against Plaintiff,

23   his property and exclusive rights.

24   137.    On or about September 12, 2022, a declarant informed Plaintiff that he had

25   purchased a new EOne UK DVD of the unauthorized version of his Motion Picture, which had

26   been ordered and delivered in Germany. See Decl. of Barry O'Donovan, including Exhibits 1

27   through 7, BE2.

28   138.    On October 1, 2022, Plaintiff contacted Rarewaves-Imports, an Amazon vendor

selling EOne UK DVDs. Plaintiff inquired whether Entertainment One supplies ASIN: B002UEX15U directly to Rarewaves-Imports. See Exhibit 93, BE.

139.    On October 3, 2022, Rarewaves-Imports responded to Plaintiff's inquiry through Amazon. While Rarewaves-Imports neither confirmed nor denied whether Entertainment One directly distributes DVDs of the unauthorized version of the Show to them, they stated: "We rely solely on the information that the manufacturer directly provides to Amazon, and as a third-party seller, we directly match barcodes of the products we sell to the existing ASINs on their database." See Exhibit 94, BE.

140.    On October 10, 2022, Barry Kelleher, Solicitor at Comyn Kelleher Tobin Solicitors, certified that he had observed the unauthorized version of the Motion Picture listed for sale on Amazon.es in Spain. The product was being sold directly by Amazon under ASIN: B002UEX15U. See Exhibit 95, BE.

141.    On October 26, 2022, Plaintiff purchased an Entertainment One DVD of the unauthorized version of the Show from Amazon.it in Italy. The DVD was sold directly by Amazon under ASIN: B002UEX15U. See Supp.Decl of Mark Mahon, including attached Exhibits, BE2.

142.    On or about November 4, 2022, Plaintiff received the Entertainment One DVD from Amazon.it in Italy. The product was sold directly by Amazon. This demonstrates Amazon is actively distributing infringing copies of the Show, contrary to Plaintiff's exclusive rights. See Supp.Decl of Mark Mahon, including Exhibits 5B through 7B, BE2.

143.    **Amazon's Perpetual Licensing Terms** - On January 6, 2023, Plaintiff observed the following statement on Amazon.com while filing another infringement report regarding ASIN: B002UEX15U: "When a detail page is created, it becomes a permanent catalog page on Amazon.com that will remain even if the creator's inventory sells out. Additionally, when you add your copyrighted image to a detail page, you grant Amazon and its affiliates a non-exclusive, worldwide, royalty-free, perpetual, irrevocable right to exercise all rights of publicity over the material." See Exhibit 96, BE.

144.    This statement implies that Amazon retains perpetual rights over copyrighted

1    materials uploaded to its platform. Plaintiff asserts that this supports his claim that EOne and

2    Osborn's sworn declaration under penalty of perjury on August 2, 2022, was false. As the sole

3    entity capable of creating the listing and granting sublicenses to Amazon.com, EOne's actions

4    constitute perjury and a direct violation of Plaintiff's intellectual property rights. The listing

5    remains active, further demonstrating EOne's ongoing infringement.

6    <div align="center">**DISCOVERY EVIDENCE FROM APPLE AND GOOGLE**</div>

7       145.    On or about January 28, 2023, Apple provided Plaintiff with license agreements

8    purportedly governing their use of the unauthorized version of the Motion Picture in connection

9    with case no. 4:20-cv-01534-YGR. Plaintiff reviewed these agreements identified as APL

10   MAHON_00000001, APL-MAHON_00000038, APL-MAHON_00000040, APL

11   MAHON_00000041, APL-MAHON_00000045, APL-MAHON_00000047, APL

12   MAHON_00000053, APL-MAHON_00000055, APL-MAHON_00000077, APL

13   MAHON_00000086, APL-MAHON_00000087, APL-MAHON_00000136, APL

14   MAHON_00000204, APL-MAHON_00000207, APL-MAHON_00000218, APL

15   MAHON_00000221, APL-MAHON_00000224, APL-MAHON_00000228, APL

16   MAHON_00000231, APL-MAHON_00000233, APL-MAHON_00000245 (collectively,

17   "Second Apple Agreements") on or about February 8, 2023, and discovered that they were

18   materially different from the First Apple Agreement provided by First EOne in case no. 4:20-cv-

19   01527-YGR. See Exhibit 3, BE3.

20      146.    On February 22, 2023, Apple provided Plaintiff with their verified First

21   Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories, as well as their

22   First Supplemental Objections and Responses to Plaintiff's First Set of Requests for Admission.

23   For the first time, Plaintiff obtained verifiable evidence, that Apple did copy, reproduce, host,

24   perform and distribute the unauthorized version of Plaintiff's Motion Picture in the United States

25   without his knowledge or consent. See Exhibit 4 – 5, BE3.

26      147.    On March 17, 2023, Google provided Plaintiff with its First Supplemental

27   Objections and Responses to Plaintiff's First Pre-Discovery Interrogatories Nos. 1 – 3. See

28   Exhibit 6, BE3. Google admitted that it did copy, host, reproduce, perform and distribute the

1    unauthorized version of Plaintiff's Motion Picture and its metadata pursuant to agreements it had

2    with Entertainment One U.S. LP.

3    148.    Google also provided Plaintiff with its First Supplemental Objections and

4    Responses to Plaintiff's Interrogatories, and their First Supplemental Objections and Responses to

5    Plaintiff's Requests for Admission. See Exhibits 7 – 8, BE3. Upon reviewing these supplemental

6    responses, for the first time, Plaintiff obtained verifiable evidence Google had been using an

7    unauthorized version of Plaintiff's Motion Picture on servers located in the United States.

8    Exhibits 7 at 15, BE3. Plaintiff further discovered that EOne had authorized Google to reproduce,

9    copy, host, distribute and perform the unauthorized version of the Motion Picture and its related

10   metadata. See Exhibits 7 at 11, BE3.

11   149.    Plaintiff further discovered the license agreements under which Google distributed

12   the unauthorized version of Plaintiff's Show, were identified as GOOG-MAHON-00000001;

13   GOOG-MAHON-00000133; GOOG-MAHON-00000334; and GOOG-MAHON-00000359

14   (collectively "Second Google Agreements"). See Exhibits 9, BE3. These encompassed multiple

15   agreements concealed by First EOne during prior proceedings. The Second Google Agreements

16   would have indisputably established that Entertainment One US LP had licensed the unauthorized

17   version of the Show directly to Google in the Northern District of California, specifically at 1600

18   Amphitheatre Parkway, Mountain View, CA 94043, as part of the Content Hosting Services

19   Agreement ("CHSA") and Amendment No.1 to CHSA. See Exhibits 9, BE3

20   150.    This marked the first time Plaintiff obtained verifiable proof that EOne had

21   provided false statements under penalty of perjury in response to verified interrogatories issued

22   by the Court. Specifically, in its verified "Response to Interrogatory No. 2: (No. 4)," signed by

23   Simon Osborn, EOne unequivocally stated: "eOne responds that none of the eOne Defendants

24   [including Entertainment One UK Limited and Entertainment One US LP] engaged in licensing

25   activity concerning the Film in the Northern District of California, or in any other federal judicial

26   district in California." See Exhibit 77 at 7: 24–26, BE.

27   151.    EOne's actions are consistent with the type of obstruction prohibited under 18

28   U.S.C. § 1505. These actions demonstrate a deliberate effort to interfere with justice and hinder

1     the lawful proceedings relevant to this case.

2     **FINANCIAL DISCREPANCIES AND FALSIFICATION OF RECORDS**

3        152.    Around this time, Google provided Excel spreadsheets purporting to show the total

4 royalties it claims to have generated. See Exhibits 10–15, BE3. However, based on the Pay-per-

5 view/New Media section of EOne's 2018 royalty report—which Plaintiff understood to

6 encompass revenues from Apple, Google LLC, and YouTube—Plaintiff's Expert Witness, Trevor

·7 Leacy, identified discrepancies. Specifically, he questioned the accuracy of the few hundred

8 dollars Google reported (Exhibit 14, BE3), as the combined amounts from Apple and Google

9 would still leave an approximate shortfall of $29,540.23. Furthermore, the Excel spreadsheets

10 provided by Google fail to constitute "ALL DOCUMENTS" related to any distribution, online

11 advertising revenue participation, or royalty statements issued by Google in connection with the

12 Film. See Exhibit 82, No. 24 at 8 [7], BE

13        153.    On March 31, 2023, Apple provided Plaintiff with their Response to Plaintiff's

14 Second Set of Interrogatories. Apple's responses confirmed EOne UK's role as the content

15 provider. See Exhibit 16, BE3. Apple also confirmed that the licenses EOne granted to Apple

16 regarding the unauthorized version of the Show, granted Apple permission to transmit, store,

17 reproduce, copy, distribute, perform *Strength and Honour* and/or *Strength and Honour's*

18 metadata on servers in California and the United States. See Exhibit 16 at 8–9, BE3. Plaintiff

19 discovered, for the first time through verifiable evidence, that Apple had been using an

20 unauthorized version of Plaintiff's Motion Picture in California, and that it was licensed for use in

21 California.

22        154.    While Apple produced its agreements with EOne and certain data related to the

23 revenue stream, the documents provided did not constitute "ALL DOCUMENTS" concerning

24 distribution, participation, or royalty statements issued by Apple in connection with the Film,

25 further obscuring the financial trail. See Exhibit 81, No. 24 at 8 [7], BE. Notably, Apple also

26 produced a communication in which EOne agreed to indemnify and hold Apple harmless with

27 respect to claims arising from the content EOne provided, including damages and expenses. See

28 Exhibit 17, BE3.

155.    On April 27, 2023, Mainsail again admitted the SAA was for "the entire world, excluding North America and Ireland" and admitted the SAA had never been amended. See Exhibit 97, Response RFA Nos. 139, 145 at 10, 13, BE.

156.    On May 5, 2023, Plaintiff obtained evidence from Mainsail confirming that EOne UK received a copy of the unauthorized version of Plaintiff's Show, which was copied in California without Plaintiff's knowledge or consent. See Exhibit 98, BE.

157.    While EOne UK may not have been directly involved in the initial creation of the counterfeit or illicit copies it originally received from Visual Data via Mainsail, their subsequent actions constitute tortious conduct.

158.    Specifically, EOne UK's decisions to distribute, import, and/or export the unauthorized version of the Motion Picture and its associated metadata to technology companies headquartered in the United States, as well as to alter the copies and metadata—including creating a counterfeit cover and trailer—were undertaken without the consent of the copyright owner. These actions violated Plaintiff's exclusive rights under the Federal Copyright Act, contractual rights, moral rights and infringed upon his personal property rights. See Exhibits 3, 7 – 8, 11 – 12 at 5, BE.

159.    On May 12, 2023, Plaintiff obtained additional evidence from Mainsail during discovery, confirming that, as of January 29, 2020, Shoreline Entertainment and EOne UK had an outstanding royalty balance of £7,901.14 for the unauthorized version of Plaintiff's Show. Based on the applicable exchange rate of 1.3205 USD per GBP on this date, the amount equates to approximately $10,434.77 USD. See Exhibit 99, BE.

160.    Plaintiff also discovered evidence indicating that, as of February 17, 2022, EOne falsified financial records to avoid liability. Outstanding royalty balances reflected an additional deficit of £155,939.88 (approximately $212,256.00 USD) —included charges for a theatrical release that never occurred. See Exhibit 100, BE.

161.    This failure was the basis for Maron Pictures' Irish legal counsel instructing Mainsail to terminate the EOne-Mainsail Agreement in late 2009 due to EOne UK's breach of the agreed terms. Plaintiff asserts that this evidence demonstrates falsification of financial records by

1    EOne, undertaken to improperly claim that no liability exists to Plaintiff and to support that

2    Mainsail owed no royalties. See Exhibit 100, BE.

3         162.    On May 8, 2024, the district court granted summary judgment in favor of Apple,

4    Google and Mainsail, relying on unverified evidence predating March 2, 2017. Defendants Apple

5    and Google argued that Plaintiff was estopped from pursuing claims against them due to the prior

6    Maron Pictures state court case. However, Maron Pictures had never issued a claim for copyright

7    infringement. See First Apple, Dkt. No. 181; First Google, Dkt. No. 193; and Mainsail, Dkt. No.

8    146. The district court's ruling failed to account for the following:

9         1.   Plaintiff did not discover or obtain verifiable evidence that his Motion Picture

10             masters were copied in California without his knowledge or consent until

11             December, 2019. Despite this, no court has addressed how Plaintiff's masters were

12             unlawfully copied and distributed in California without his knowledge or consent,

13             subsequently being disseminated worldwide. Companies headquartered in the

14             District received and used these unlawful copies on their platforms in California,

15             despite Plaintiff never transferred any rights to North America to any party or

16             entity, nor receiving any compensation for their use. Such actions are not only

17             illegal but also ethically and morally reprehensible.

18         2.   The district court improperly relied on unverified evidence predating March 2,

19             2017, despite its prior ruling that the scope of review would be limited to events

20             occurring after March 3, 2017. See Exhibit 76 at 9 – 10, BE. This reliance was

21             particularly problematic given that Plaintiff had revoked Maron Pictures' rights on

22             October 1, 2015, with those rights retroactively reverting to Plaintiff.

23         3.   Plaintiff did not discover or obtain verifiable evidence until February and March

24             2023 that Apple and Google were using an unauthorized version of his Show in

25             California and the United States without his knowledge or consent since 2010 and

26             2011, respectively.

27         4.   Plaintiff's claims before the district court were issued in his personal capacity,

28             whereas the prior state court action was brought by Maron Pictures. Therefore,

- 37 -

1    issues related to the Maron Pictures-Mainsail agreement were not before the

2    district court for consideration.

3    163.    On June 6, 2024, Plaintiff timely appealed the district court's rulings in the First

4    Apple, First Google, and Mainsail cases to the United States Court of Appeals for the Ninth

5    Circuit. See Appeal Nos. 24-3570, 24-3571, and 24-3589. Plaintiff disputes the district court's

6    decisions, asserting that it deviated from its prior omnibus ruling limiting the scope of review to

7    the three-year statute of limitations period commencing March 2, 2017. Contrary to this

8    guideline, issues related to the Maron Pictures-Mainsail agreement were not before the district

9    court for this very reason.

10    164.    Plaintiff further asserts that Apple evaded its obligations by omitting the amended

11    pages of the unverified Maron Pictures-Mainsail agreement while relying on an outdated

12    licensing agreement. This outdated agreement neither covered North America or Ireland nor

13    authorized the version of the Motion Picture used in California, rendering it inapplicable to

14    Plaintiff's claims.

15    165.    Plaintiff contends that Apple and Google's actions form part of a broader strategy

16    of collusion with EOne, aimed at advancing EOne's interests at Plaintiff's expense. Notably,

17    EOne indemnified Apple for all damages, expenses, and attorney's fees arising from claims over

18    content EOne provided them. See Exhibit 17, BE3.

19    166.    Plaintiff never assigned any rights to Defendants to use the unauthorized version

20    of his Show in the Republic of Ireland, North America, or any other jurisdiction. The version of

21    the film utilized by Defendants in California was used without Plaintiff's knowledge or consent,

22    constituting an unauthorized and unlawful concealment and exploitation of Plaintiff's property,

23    metadata, and intellectual property rights.

24    **EFFORTS BY PLAINTIFF TO TOLL STATUTES OF LIMITATIONS**

25    167.    On June 10, 2024, Plaintiff contacted EOne, Apple, and Google, informing them

26    of his intent to escalate the matter and pursue further litigation. However, Plaintiff proposed

27    staying further litigation until the conclusion of the appeals, provided Defendants agreed to

28    globally toll the expiration of any statute of limitations. See Exhibit 101, BE.

1    168.   On June 14, 2024, EOne's counsel responded, stating that the Entertainment One

2    entities, Apple, and Google were unwilling to enter into such a stipulation. See Exhibit 102, BE.

3    169.   On January 14, 2025, Plaintiff formally notified Defendants of his intent to file

4    additional litigation absent a tolling agreement. See Exhibit 103, BE.

5    170.   On January 18, 2025, Defendants responded, stating they were unwilling to enter

6    into such a stipulation. See Exhibit 104, BE. Defendants' refusal underscores their coordinated

7    enterprise strategy to evade liability and support Plaintiff's claims for relief.

8    **FIRST CLAIM FOR RELIEF**

9    **Racketeer Influenced and Corrupt Organization Act ("RICO") Claim – 18 U.S.C. § 1962(c)**

10    *(Against Defendants EOne; Apple and Google)*

11    171.   Plaintiff incorporates by reference each and every allegation set forth in

12    paragraphs 1 through 170 of this Complaint fully set forth herein.

13    172.   This claim arises under the RICO Act, 18 U.S.C. §§ 1961–1968. Plaintiff alleges

14    that Defendants' violated RICO by forming an association-in-fact enterprise to profit from the

15    unauthorized exploitation of the Plaintiff's copyrighted work in the United States and abroad.

16    173.   Defendants' actions constitute a violation of 18 U.S.C. § 1962(c), which prohibits

17    any person employed by or associated with an enterprise engaged in, or the activities of which

18    affect, interstate or foreign commerce, from conducting or participating, directly or indirectly, in

19    the conduct of such enterprise's affairs through a pattern of racketeering activity.

20    174.   Defendants, including but not limited to EOne UK, Osborn, EOne US, Apple, and

21    Google, acting individually and collectively, formed an association-in-fact enterprise

22    ("Enterprise") within the meaning of 18 U.S.C. § 1961(4). This Enterprise was established for the

23    common purpose of profiting from another person's property within the meaning of the 18 U.S.C.

24    § 1961(3), as well as unauthorized and unlicensed exploitation of Plaintiff's copyrighted work,

25    intentional concealment of material facts, and obstruction of justice to evade liability.

26    175.   The Enterprise operated with a coordinated structure, with EOne UK and Osborn

27    overseeing licensing activities, Apple and Google providing platforms for distribution, and all

28    Defendants collaborating to execute a fraudulent scheme. The Enterprise is distinct from the

-39-

1  individual Defendants and their respective legal entities.

2      176.   Specific allegations include: (a) Submission of false interrogatories; (b)

3  Concealment and obstruction of licensing agreements; (c) Trafficking and distribution of

4  unauthorized versions of the Plaintiff's work, misrepresented as a "Brit flick"; and (d) Continuous

5  fraudulent communications and financial misreporting.

6      177.   Defendants acted collectively as an Enterprise, distinct from their individual

7  entities, to commit predicate acts under RICO. These acts – Mail Fraud (18 U.S.C. § 1341), Wire

8  Fraud (18 U.S.C. § 1343), Obstruction of Justice (18 U.S.C. § 1505), and Trafficking in

9  Counterfeit Labels (18 U.S.C. § 2318) – are clearly defined under 18 U.S.C. § 1961(5).

10     178.   Plaintiff demonstrates closed-ended and open-ended continuity through ongoing

11  acts over a decade. Repeated fraudulent communications and concealment, occurring over an

12  extended period and support the claim of a threat of ongoing criminal activity.

13     179.   Defendants used electronic communications, including emails and digital

14  transmissions, to defraud Plaintiff (18 U.S.C. § 1343) and to execute a fraudulent scheme.

15  Specific examples include, but are not limited to:

16          a.  October 8, 2020 – December 22, 2020: EOne UK and Osborn knowingly provided

17             false statements under penalty of perjury in response to court-ordered

18             interrogatories, while withholding critical evidence, including licensing

19             agreements. These false statements, interrogatories, the First Apple Agreement and

20             the First Google Agreement were sent to Plaintiff by email via email. This

21             concealment caused Plaintiff's claims to be dismissed. Plaintiff also obtained a

22             subsequent EOne UK royalty statement on May 12, 2023 via electronic

23             communication showing false financial reporting.

24          b.  March 17, 2023 – May 12, 2023: Google provided minimal and false financial

25             information to minimize liability via electronic communications, including

26             unsupported royalty statements and different agreements to the First Google

27             Agreement.

28     180.   Defendants knowingly concealed material evidence, including license agreements,

- 40 -

1  and submitted false statements in judicial proceedings. This obstruction of justice (18 U.S.C. §

2  1505) deprived Plaintiff of the opportunity to enforce his rights in prior litigation. Specific acts

3  include but are not limited to:

4          a.  October 8, 2020 – December 22, 2020: EOne and Osborn submitted false

5              interrogatory responses while concealing key licensing agreements.

6          b.  March 17, 2023: Google revealed agreements that had been concealed for over 600

7              days, demonstrating prior efforts to withhold critical evidence.

8          c.  October 31, 2023: Apple submitted incomplete agreements to a District Court,

9              omitting pages amended on July 2, 2009, relevant to the issues before the Court.

10      181.  Defendants trafficked in counterfeit labels and packaging (18 U.S.C. § 2318) by

11  distributing unauthorized versions of Plaintiff's copyrighted work. The unauthorized version was

12  misrepresented as a "Brit flick," despite being an Irish production, misleading consumers and

13  stakeholders about its origin, as mandated by the Advertising Restrictions.

14      182.  Defendants willfully infringed (17 U.S.C. § 501) Plaintiff's copyright protected

15  work by copying, reproducing, distributing, and performing unauthorized versions of Plaintiff's

16  work without consent and trafficked in counterfeit labels (18 U.S.C. § 2318) in California, as

17  Plaintiff discovered between March 17, 2023 and March 31, 2023. Specific instances include but

18  are not limited to:

19          1.  January 2, 2019: YouTube distributed an unauthorized version of the Motion

20              Picture, falsely advertising it as a "Brit flick";

21          2.  January 7, 2019: Apple distributed an unauthorized version of the Motion Picture,

22              falsely advertising it as a "Brit flick";

23          3.  January 9, 2019: Google distributed an unauthorized version of the Motion Picture,

24              falsely advertising it a British flick;

25          4.  December 29, 2021 – January 4, 2022: Google distributed an unauthorized version

26              of the Motion Picture, falsely advertising it as a "Brit flick" on YouTube and

27              Google Play.

28

1        5.   January 7, 2022: Apple distributed an unauthorized version of the Motion Picture,

2           falsely advertising it as a "Brit flick" on iTunes.

3      183.   Defendants' racketeering activity spanned over a decade, with repeated instances

4 of fraudulent communications, copyright infringement, trafficking in counterfeit labels, and

5 obstruction, demonstrating both closed-ended and open-ended continuity. This conduct was

6 intentional, related, designed to defraud Plaintiff, and directly caused harm to Plaintiff's business

7 and personal property.

8      184.   The Enterprise's activities, including the unauthorized distribution of Plaintiff's

9 copyrighted work, efforts to mislead Plaintiff and the courts through false statements and

10 concealment of evidence, the transmission of fraudulent communications, directly affecting

11 interstate and foreign commerce. Defendants' actions enabled them to profit from the exploitation

12 of Plaintiff's intellectual property in the United States and abroad.

13     185.   As a direct and proximate result of Defendants' racketeering activity, Plaintiff

14 suffered substantial injury to his business and property, including financial devastation to his

15 intellectual property globally, lost royalties and licensing revenue, damage to his professional

16 reputation, and costs incurred in addressing Defendants' misconduct. These injuries are directly

17 tied to the fraudulent scheme executed by the Enterprise.

18     186.   Plaintiff's injuries are compensable under 18 U.S.C. § 1964(c).

19     187.   The aforementioned conduct by Defendants constitutes violations of the Racketeer

20 Influenced and Corrupt Organizations Act, specifically 18 U.S.C. § 1962(c). Plaintiff respectfully

21 requests a declaratory judgment that Defendants have violated RICO.

22     188.   Plaintiff seeks an award of treble damages for all his financial losses, including the

23 financial devastation of his property, lost royalties, licensing revenue, and other compensable

24 damages, in an amount to be proven at trial.

25     189.   Plaintiff further requests an award of restitution to recover all ill-gotten gains

26 obtained by Defendants through their wrongful conduct, including all profits derived from the

27 unauthorized exploitation of Plaintiff's intellectual property and fraudulent concealment of

28 evidence.

1    190.    Plaintiff also seeks injunctive relief enjoining Defendants from further violations

2    of 18 U.S.C. § 1962(c), attorneys' fees, costs of litigation, including pre- and post-judgment

3    interest as allowed by law, and such other relief as the Court deems just and proper.

**SECOND CLAIM FOR RELIEF**

**Fraud on the Court**

*(Against Defendants EOne; Apple and Google)*

7    191.    Plaintiff incorporates by reference each and every allegation set forth in

8    paragraphs 1 through 190 of this Complaint as though fully set forth herein.

9    192.    This claim arises from Defendants' deliberate and egregious actions that constitute

10   fraud on the court in violation of federal law, including but not limited to: 18 U.S.C. § 1505

11   (Obstruction of Justice); 18 U.S.C. § 1621 (Perjury); and Federal Rule of Civil Procedure

12   60(b)(3).

13   193.    Defendants, acting individually and collectively, engaged in intentional

14   misconduct to undermine the integrity of federal judicial proceedings and deprived Plaintiff of a

15   fair trial. Their actions include, but are not limited to:

16       a. Defendants knowingly introduced and supplied falsified documents as well as

17   concealed licensing agreements, royalty reports, and full financial records in federal court

18   proceedings to mislead the court and Plaintiff. Specific acts include, but are not limited to EOne

19   UK and Osborn submitting false interrogatory responses and concealing key licensing agreements

20   from October 8, 2020, to December 22, 2020, which Plaintiff discovered between February 8,

21   2023, and March 17, 2023.

22       b. Defendants, through their officers and representatives, made material misstatements

23   under oath supplied during judicial proceedings. These included false claims regarding ownership

24   rights, licensing terms, and royalty obligations. Notably, Osborn signed and verified on October

25   8, 2020, that "none of the eOne Defendants [including EOne UK and EOne US] engaged in

26   licensing activity concerning the Film in the Northern District of California," which Plaintiff

27   discovered was false testimony on February 8, 2023; March 17, 2023; and March 31, 2023.

28       c. EOne intentionally concealed critical agreements and Google intentionally withheld

- 43 -

documents relevant to Plaintiff's claims, including full financial records, in direct violation of federal discovery obligations. Between October 8, 2020, and December 22, 2020, EOne UK and Osborn submitted false interrogatory responses while concealing key licensing agreements with Apple and Google in full and in part. Plaintiff discovered these omissions between February 8, 2023, and March 17, 2023. In or around March 17, 2023, Google revealed Second Google Agreements, which had been concealed for over 600 days, demonstrating prior efforts to withhold critical evidence.

       d. Defendants colluded and coordinated false narratives to obstruct justice by aligning their misrepresentations, thereby creating a false factual basis designed to mislead the court and Plaintiff.

       194.    The misconduct described above was not accidental or incidental but was part of a deliberate scheme to corrupt the judicial process. The submission of falsified documents and concealment of evidence are classic examples of fraud on the court under Federal Rule of Civil Procedure 60(b)(3) and 60(d). Defendants acted with the specific intent to: a. Deprive Plaintiff of a fair opportunity to litigate his claims; b. Obstruct the court's ability to render an impartial judgment; and c. Conceal their wrongful actions to evade accountability.

       195.    Defendants' fraudulent conduct directly harmed Plaintiff by: a. Denying Plaintiff a fair trial; b. Obstructed the court's ability to render an impartial judgment; c. Forcing Plaintiff to incur substantial costs and expenses to address Defendants' misconduct; d. Causing emotional distress through deliberate and malicious interference with Plaintiff's rights; e. Damaging Plaintiff's professional reputation and standing in the industry; and f. Damaging Plaintiff's personal reputation and standing in his community.

       196.    Defendants' actions strike at the heart of the judicial process, compromising the court's ability to function as an impartial forum for the resolution of disputes. Their conduct constitutes fraud on the court, warranting severe sanctions and equitable relief, including but not limited to: (a) Setting aside orders in case nos. 4:20-cv-01527-YGR and 4:21-cv-08562-YGR under Federal Rule of Civil Procedure 60(d)(1); or (b) Exercising the inherent authority of federal courts pursuant to Federal Rule of Civil Procedure 60(d)(3).

1    197.   Plaintiff has no adequate remedy at law to address the harm caused by Defendants'

2    actions. Equity demands that the Court impose appropriate sanctions and remedies to restore the

3    integrity of the judicial process and compensate Plaintiff for the damages sustained.

4    198.   The aforementioned conduct by EOne UK and Osborn constitutes fraud on the

5    court. Plaintiff respectfully requests a declaratory judgment that EOne UK and Osborn engaged in

6    fraudulent conduct designed to corrupt the judicial process and obstruct justice.

7    199.   Plaintiff requests that the Court impose appropriate sanctions on EOne UK and

8    Osborn, including an order requiring EOne UK and Osborn to produce all relevant documents and

9    information wrongfully withheld.

10    200.   Plaintiff seeks adverse inferences or evidentiary presumptions in favor of Plaintiff

11    and any other measure deemed just and proper to restore the integrity of the judicial process.

12    201.   Plaintiff requests, under the inherent authority of federal courts, monetary

13    penalties sufficient to deter future misconduct.

14    202.   As a result of Defendants EOne UK and Osborn's wrongful conduct, Plaintiff

15    seeks:

16        (1) Compensatory damages and punitive damages, as Defendants' fraud was

17            intentional, malicious, and reckless;

18        (2) Damages for emotional distress and reputational harm; and

19        (3) Any additional damages proven at trial.

20    203.   Plaintiff further seeks an award of costs and reasonable attorneys' fees permitted

21    by law or equity, and any additional equitable relief necessary to remedy the harm caused by

22    Defendants' misconduct and restore the integrity of the judicial process.

23    204.   Plaintiff also seeks such other and further relief as the Court deems just and

24    proper.

25                        **THIRD CLAIM FOR RELIEF**

26                        **Obstruction of Justice**

27                    ***(Against Defendants EOne, Apple and Google)***

28    205.   Plaintiff incorporates by reference each and every allegation set forth in

1    paragraphs 1 through 204 of this Complaint as though fully set forth herein.

2        206.    Defendants violated federal obstruction of justice statutes, including 18 U.S.C. §

3    1505, which prohibits corrupt endeavors to influence, obstruct, or impede the due administration

4    of justice, and 18 U.S.C. § 1519, which criminalizes the destruction, alteration, or falsification of

5    records with the intent to obstruct or influence an investigation or proper administration of any

6    matter within the jurisdiction of the United States. The conduct includes specific actions such as

7    submitting false declarations and concealing evidence, directly aiming to obstruct judicial

8    proceedings. These acts satisfy the elements of corrupt intent and material interference required

9    under § 1505, as well as the intentional falsification of records to impede legal processes under §

10   1519.

11       207.    Defendants Apple, Google, and EOne, acting individually and collectively,

12   engaged in a deliberate course of conduct designed to obstruct justice by interfering with the due

13   administration of federal judicial proceedings in which Plaintiff was a party.

14       208.    The false declarations and coordinated misrepresentations refer to sworn

15   statements and submissions made by Defendants in case nos. 4:20-cv-01525-YGR; 4:20-cv-

16   01527-YGR; 4:20-cv-01534-YGR and 4:21-cv-08562-YGR that contained materially inaccurate

17   or misleading information. These included, but were not limited to, public misrepresentations

18   about contract terms, their unauthorized use of Plaintiff's Motion Picture in California and

19   financial information sealed behind the court. Defendants' actions were coordinated to present a

20   unified but false narrative, undermining the integrity of the judicial process. The impact of these

21   misrepresentations was significant, as they directly influenced the court's decisions on critical

22   motions, thereby prejudicing Plaintiff's ability to present his case effectively.

23       209.    Defendants' actions, including submitting false declarations and withholding

24   critical evidence, were deliberately calculated to obstruct Plaintiff's litigation efforts. This

25   obstruction hindered Plaintiff by creating a false factual record that undermined the court's ability

26   to fairly adjudicate the issues. The resulting prejudice to Plaintiff included increased litigation

27   costs, diminished opportunities to obtain favorable rulings, and the erosion of Plaintiff's ability to

28   present a full and accurate case to the court.

- 46 -

210.   Defendants' conduct constitutes obstruction of justice because it directly interfered with the judicial process, including but not limited to: a. Preventing Plaintiff from obtaining material evidence necessary to substantiate his claims; b. Forcing Plaintiff to incur significant costs to uncover and address Defendants' obstructionist tactics; c. Delaying the resolution of Plaintiff's claims, causing ongoing harm and prejudice; d. Disrupting the integrity of federal judicial proceedings; and e. Defendants engaged in a pattern of misrepresentation by requesting the Court to seal documents containing information it alleged to be confidential and sensitive, while subsequently making public statements that directly contradicted the representations made to the Court.

211.   As a direct and proximate result of Defendants' obstruction of justice, Plaintiff has suffered substantial harm, including but not limited to:

(1) Financial losses, including litigation and investigative expenses incurred to address Defendants' misconduct;

(2) Reputational harm caused by Defendants' false representations and interference with the judicial process;

(3) Emotional distress resulting from Defendants deliberate and malicious efforts to obstruct justice and deprive Plaintiff of his rights; and

(4) Other damages to be proven at trial.

212.   Defendants' conduct was intentional, egregious, and part of a broader scheme to evade accountability for their unlawful actions, warranting significant legal and equitable remedies.

213.   The aforementioned conduct by Defendants constitutes obstruction of justice. Plaintiff respectfully requests a declaratory judgment declaring that Defendants have violated federal law, including but not limited to 18 U.S.C. §§ 1503, 1505 and 1519.

214.   The scope of injunctive relief Plaintiff seeks includes measures such as requiring Defendants to implement and adhere to compliance programs designed to prevent future obstruction of justice, mandating the appointment of an independent monitor to oversee adherence to discovery obligations and court orders, and compelling the production of previously

- 47 -

1  withheld or concealed evidence. Additionally, Plaintiff seeks a court order prohibiting Defendants

2  from engaging in specific obstructive practices, such as submitting false declarations or

3  concealing critical documents in ongoing and future litigation.

4      215.    Plaintiff also requests that the Court order Defendants to implement measures

5  ensuring compliance with discovery obligations and preserving relevant evidence.

6      216.    As a result of Defendants' wrongful conduct, Plaintiff seeks an award of

7  compensatory damages, including but not limited to:

8              (1) Litigation costs and expenses incurred to address Defendants' misconduct;

9              (2) Damages for emotional distress caused by Defendants deliberate and malicious

10             actions; and

11             (3) Other compensatory damages to be proven at trial.

12     217.    Plaintiff further seeks an award of punitive damages to punish Defendants for their

13  intentional and egregious conduct, and to deter similar misconduct by Defendants and others in

14  the future.

15     218.    Plaintiff requests an order imposing adverse inferences against Defendants

16  regarding the evidence they altered, or concealed including presumptions in favor of Plaintiff's

17  claims as the Court deems appropriate.

18     219.    Plaintiff also seeks an award of costs and reasonable attorneys' fees permitted by

19  law or equity, and such other and further relief as the Court deems just and proper.

20                              **FOURTH CLAIM FOR RELIEF**

21                  **Fraud Based on Spoliation of Evidence (Federal Proceedings)**

22                          ***(Against Defendants EOne UK and Osborn)***

23     220.    Plaintiff incorporates by reference each and every allegation set forth in

24  paragraphs 1 through 219 of this Complaint as though fully set forth herein.

25     221.    This claim arises under the inherent authority of federal courts to sanction and

26  address fraud upon the court, including intentional spoliation of evidence that undermines the

27  judicial process.

28     222.    The verified interrogatories refer to sworn responses provided by EOne UK and

                                          - 48 -

1    Osborn during the limited jurisdictional discovery process, which purported to disclose all

2    relevant and material information. However, these special interrogatories were based on

3    incomplete and concealed evidence, as EOne intentionally withheld or altered documents that

4    were critical to Plaintiff's claims. For instance, EOne failed to disclose key agreements that

5    directly contradicted their responses, thereby misleading Plaintiff and the court. This concealment

6    of the full Apple and Google agreements materially affected the litigation by depriving Plaintiff

7    of the opportunity to challenge Defendants' assertions and fully develop his case, as he would

8    have established that the Court did have jurisdiction over EOne in case nos. 4:20-cv-01527-YGR

9    and 4:21-cv-08562-YGR.

10    223.    The spoliated evidence was critical to the adjudication of Plaintiff's claims in case

11    no. 4:20-cv-01527-YGR, as it pertained to: a. Unauthorized use and exploitation of Plaintiff's

12    intellectual property in California and North America; b. Trafficking of counterfeit labels in

13    California and North America; c. Reputational damage incurred by Plaintiff on a continuous

14    accrual basis since 2010; d. Financial damages suffered by Plaintiff; e. The validity of EOne's

15    defenses.

16    224.    Between October 8, 2020, and December 22, 2020, Defendants EOne UK and

17    Osborn knowingly presented falsified or incomplete licensing agreements, referred to as the First

18    Apple Agreement and the First Google Agreement, to conceal their unlawful actions and obstruct

19    Plaintiff's ability to present a fair case. Additionally, material omissions were identified in the

20    versions of the Second Apple Agreements and the Second Google Agreement produced during

21    Apple and Google's discovery over 600 days after being served with Requests for Production of

22    Documents. These discrepancies and omissions substantiate the claim by demonstrating

23    Defendant EOne UK and Osborn intentional withholding or alteration of evidence to mislead

24    Plaintiff and the court.

25    225.    Plaintiff discovered the spoliation between February 8. 2023, and March 17, 2023,

26    when he obtained the Second Apple Agreements and Second Google Agreements from Apple and

27    Google. These agreements contradict EOne's prior representations to the Court regarding the

28    scope of its licensing activities in the District with Plaintiff's Motion Picture, evidence that would

1    have established jurisdiction against EOne in the Northern District of California.

2          226.    Defendant EOne UK and Osborn's actions constitute fraud based on spoliation of

3    evidence, involving intentional conduct designed to deceive Plaintiff, the court and impair the

4    judicial process.

5          227.    As a direct and proximate result of Defendant EOne UK and Osborn's spoliation

6    of evidence, Plaintiff suffered significant harm, including: a. Prejudice in the ability to prosecute

7    claims; b. Economic losses, including lost licensing revenue and litigation costs; and

8    c. Reputational damage caused by the inability to establish the full extent of Defendants'

9    misconduct fully.

10         228.    Defendant EOne UK and Osborn's actions violate federal law and the inherent

11   authority of federal courts to protect the integrity of judicial proceedings.

12         229.    Fraud upon the court involves conduct that defiles the judicial process itself,

13   undermining its integrity and impartiality. The key elements include: (1) intentional misconduct

14   by officers of the court, including attorneys or parties, (2) aimed at deceiving the court or

15   influencing its decisions, (3) with material impact on the administration of justice. Defendant

16   EOne UK and Osborn's actions, including submitting false declarations, delaying and concealing

17   evidence, were deliberately designed to mislead the court and obstruct its ability to adjudicate

18   fairly. These acts were not merely procedural violations but constituted a direct affront to the

19   judicial process, causing significant harm to Plaintiff by distorting the factual record and

20   impairing the court's decision-making.

21         230.    As a direct and proximate result of Defendant EOne UK and Osborn's spoliation

22   of evidence, Plaintiff seeks monetary damages in an amount to be proven at trial, including:

23              (1) Compensatory damages for economic losses;

24              (2) Damages for the ongoing reputational harm caused by the inability to fully

25                  establish Defendant's EOne's misconduct; and

26              (3) Punitive damages to deter similar misconduct in the future.

27         231.    The adverse inferences sought include presumptions that the altered or concealed

28   evidence would have been unfavorable to Defendants and supportive of Plaintiff's claims.

- 50 -

1    Specifically, Plaintiff requests that the court infer Defendants' liability on key issues, such as

2    copyright infringement, trafficking in counterfeit labels, fraud and intentional infliction of

3    emotional distress from case nos. 4:20-cv-01527-YGR and 4:21-cv-08562-YGR based on the

4    spoliation, or the relevant claims for relief in this Complaint. These inferences would redress the

5    harm caused by spoliation by leveling the evidentiary playing field, compensating for the

6    destruction or concealment of critical evidence, and deterring similar misconduct in the future. By

7    adopting these inferences, the court can mitigate the prejudice to Plaintiff and uphold the integrity

8    of the judicial process.

9        232.    Plaintiff also seeks an award of attorneys' fees and costs incurred in pursuing this

10   claim, and any additional relief the Court deems just and proper.

### FIFTH CLAIM FOR RELIEF

### Unjust Enrichment (Tied to Federal)

### *(Against Defendants EOne, Apple and Google)*

14       233.    Plaintiff incorporates by reference each and every allegation set forth in

15   paragraphs 1 through 232 of this Complaint as though fully set forth herein.

16       234.    This claim arises under the principles of equity and law, addressing the unjust

17   retention of benefits by Defendants Apple, Google, and EOne at Plaintiff's expense.

18       235.    Defendants made numerous fraudulent misrepresentations publicly, including, but

19   not limited to, false statements regarding the existence and terms of critical agreements such as

20   the "First Apple Agreement" and the "First Google Agreement." For example, EOne falsely

21   claimed that these agreements did not impose specific obligations on EOne that would have

22   supported Plaintiff's claims. Additionally, Defendants misrepresented their compliance with

23   discovery obligations, asserting full disclosure while concealing material evidence such as

24   internal communications and complete financial records directly relevant to the litigation.

25       236.    These fraudulent misrepresentations misled Plaintiff into pursuing litigation

26   strategies based on incomplete or false information, resulting in increased legal costs, delayed

27   proceedings, and diminished ability to substantiate claims effectively. Defendants engaged in a

28   pattern of misrepresentation by requesting the Court to seal documents containing information it

alleged to be confidential and sensitive, while subsequently making public statements that directly

contradicted the representations made to the Court. These public statements reveal that

Defendant's request to seal was made in bad faith, with the intent to mislead the Court and

obstruct Plaintiff's ability to uncover the truth. Such conduct constitutes a deliberate abuse of the

judicial process and undermines the integrity of these proceedings.

237.    Defendants' misconduct, including the concealment or obstruction of material

agreements and misrepresentations of their terms, directly contributed to their competitive

advantages and them retaining financial benefits. Specifically, by withholding evidence of the full

contractual obligations, EOne were able to mislead Plaintiff and the Court about their market

position and compliance with legal standards despite profits being derived from an unauthorized

exploitation of Plaintiff's intellectual property in California. These actions allowed Defendants to

secure favorable market positions, make public statements under false pretenses, and avoid

financial liabilities that would have otherwise diminished their profitability. The resulting

financial gains and competitive advantages were thus inextricably linked to the alleged

misconduct.

238.    Defendants' retention of these benefits is unjust because it was obtained through

unlawful means, including violations of federal laws (e.g., 18 U.S.C. § 1962(c), 18 U.S.C. § 2318,

spoliation of evidence in federal proceedings) and California law (e.g., fraud and unfair

competition under Cal. Bus. & Prof. Code § 17200).

239.    Plaintiff has suffered significant harm as a direct and proximate result of

Defendants' actions, including but not limited to:

(1) Lost licensing revenue and royalties;

(2) Financial harm and devastation to Plaintiff's branded intellectual property globally;

(3) Reputational damage that has diminished Plaintiff's standing in his industry;

(4) Substantial legal and investigative costs incurred to address Defendants'

misconduct; and

(5) Emotional distress caused by Defendants' deliberate and ongoing attempts to

deprive Plaintiff of his rights and obstruct justice.

240.    Equity demands that Defendants disgorge all ill-gotten gains and provide
restitution to Plaintiff. Legal remedies alone are inadequate to fully address the harm caused to
Plaintiff by Defendants' conduct over a fifteen-year period. Although monetary damages are
necessary to underscore the harm, they are insufficient to remedy the ongoing and intangible
injuries inflicted by Defendants' actions. These injuries include the erosion of judicial integrity,
Plaintiff's diminished ability to compete fairly in the market, and the unjust enrichment of
Defendants at Plaintiff's expense. Equitable relief, including restitution to address the improper
retention of benefits and injunctive measures to prevent further misconduct, is essential to fully
redress the harm and restore fairness. Without such relief, Defendants would continue to profit
from their wrongful actions, perpetuating an inequitable imbalance that legal remedies alone
cannot correct.

241.    By retaining benefits obtained through their wrongful conduct, Defendants have
been unjustly enriched at Plaintiff's expense, and equity requires that such enrichment be
remedied.

242.    Thus, equity and justice demand that Defendants disgorge all profits derived from
their wrongful conduct and unauthorized misrepresentations of Plaintiff's Motion Picture,
including its mischaracterization as a "Brit flick" despite being an Irish production. This includes,
but is not limited to, all financial benefits obtained through fraudulent misrepresentations and
competitive advantages secured through spoliation and other misconduct.

243.    As a result of Defendants' wrongful conduct, including their fraudulent
misrepresentations, trafficking in counterfeit labels, spoliation of evidence, and obstruction of
justice, Plaintiff seeks full restitution of all benefits unjustly retained by Defendants, in an amount
to be proven at trial, along with pre- and post-judgment interest as allowed by law.

244.    Plaintiff further seeks attorneys' fees and costs incurred as permitted under
applicable federal or California law, or as justified by equitable principles; and such other and
further relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### Breach of Discovery Obligations

1    *(Against Defendants EOne UK, Osborn and Google)*

2    245.    Plaintiff incorporates by reference each and every allegation set forth in

3    paragraphs 1 through 244 of this Complaint as though fully set forth herein.

4    246.    This claim arises under federal and California discovery laws, including: a.

5    Federal Rules of Civil Procedure 26(g), 37(b), and 37(e); b. California Code of Civil Procedure

6    §§ 2023.010–2023.030.

7    247.    Defendants Google, EOne UK and Osborn, acting individually and collectively,

8    engaged in a deliberate pattern of misconduct during the discovery process in violation of federal

9    and state discovery rules, including, but not limited to:

10    a. Defendants EOne UK and Osborn willfully failed or refused to produce the key

11    agreements, including the full licensing agreements it allegedly authorized Google's use of

12    Plaintiff's intellectual property and metadata;

13    b. Defendants EOne UK and Osborn willfully failed or refused to produce the key

14    agreements, including the full licensing agreements it allegedly authorized Apple's use of

15    Plaintiff's intellectual property and metadata;

16    c. Defendants Google knowingly submitted false evidence and documents, including

17    fabricated or altered financial records regarding Plaintiff's Motion Picture, with the intent to

18    mislead Plaintiff and the Court;

19    d. Defendants Google knowingly and intentionally concealed information relevant to

20    Plaintiff's claims for over 600 days, further prejudicing Plaintiff's ability to prosecute his case;

21    e. Defendants Google, EOne UK and Osborn failed to fully comply with court orders

22    compelling the production of documents and responses to court ordered pre-discovery

23    interrogatories, thereby obstructing Plaintiff's ability to litigate his claims effectively.

24    248.    The "First Apple Agreement" and "First Google Agreement" reveal material

25    discrepancies compared to the final versions produced, referred to as the "Second Apple

26    Agreements" and "Second Google Agreements". These discrepancies demonstrate EOne's

27    knowledge of and intent of the omissions. These documents are directly relevant because they

28    support Plaintiff's claims of fraudulent misrepresentation, spoliation of evidence, and abuse of

- 54 -

1    process by evidencing EOne and Google's intent to conceal material information and mislead the

2    Court.

3        249.    Defendants EOne and Google's actions constitute discovery abuse under

4    California law and federal rules, including but not limited to: a. Misuse of Discovery: Failing to

5    respond to authorized discovery methods by  providing evasive or incomplete responses, and

6    concealing or altering evidence; b. Obstruction of Justice: Engaging in conduct that significantly

7    interfered with the discovery process and the Court's ability to adjudicate Plaintiff's claims; and

8    c. Intentional Spoliation: Altering or concealing evidence with the specific intent to deprive

9    Plaintiff of its use in litigation.

10        250.    Defendants EOne and Google's violated specific provisions of the Federal Rules

11    of Civil Procedure, including Rule 26 (Duty to Disclose; General Provisions Governing

12    Discovery) by failing to disclose and produce key documents, and Rule 37 (Failure to Make

13    Disclosures or to Cooperate in Discovery; Sanctions) by willfully withholding evidence despite

14    court orders. Additionally, under the California Code of Civil Procedure, sections 2023.010

15    (Misuses of the Discovery Process) and 2025.450 (Motion to Compel Production or Inspection),

16    Defendants engaged in discovery abuses by refusing to comply with lawful discovery requests

17    and court orders, thereby obstructing Plaintiff's ability to obtain material evidence. These

18    violations demonstrate a pattern of bad faith conduct that undermined the discovery process, the

19    integrity of judicial proceedings, and Plaintiff's ability to litigate effectively.

20        251.    Defendants' coordinated effort to obstruct justice and engage in discovery abuses

21    were willful, intentional, and carried out with specific intent to mislead the Court and Plaintiff.

22    By knowingly concealing material evidence and submitting false information, EOne and Google

23    undermined the integrity of the judicial process, distorted the factual record before the Court, and

24    deprived Plaintiff of a fair opportunity to litigate his claims on an even playing field.

25        252.    Defendants' breach of discovery obligations caused significant harm to Plaintiff,

26    including but not limited to: a. Plaintiff was prejudiced and deprived of critical evidence

27    necessary to substantiate his claims, undermining his ability to present a complete and fair case;

28    b. Plaintiff incurred substantial litigation and investigative expenses to address Defendants'

misconduct; c. Plaintiff's personal and professional reputation was damaged due to delays and obstructions caused by Defendants EOne and Google; and d. Plaintiff suffered emotional harm as a result of Defendants' deliberate and malicious interference with his rights.

253.    The aforementioned conduct by Defendants EOne and Google constitutes breach of discovery obligations. Plaintiff respectfully requests a declaratory judgment declaring that Defendants EOne and Google have violated federal law, including California law, and engaged in spoliation of evidence.

254.    Plaintiff requests an order imposing sanctions against Defendants EOne and Google to level the playing field, including but not limited to: a. Adverse inferences regarding the spoliated and withheld evidence; b. Monetary penalties to compensate Plaintiff for the costs of addressing Defendants' misconduct; and c. Appointment of a discovery master or court-appointed monitor to oversee compliance with discovery obligations.

255.    Plaintiff seeks adverse inferences, including a presumption that the withheld or altered evidence would have been unfavorable to Defendants and supportive of Plaintiff's claims. Specifically, Plaintiff requests inferences establishing Defendants' liability on key issues, such as fraudulent misrepresentation, and intentional spoliation of evidence.

256.    Plaintiff seeks monetary penalties, including: a. Reimbursement of all legal fees and costs incurred due to Defendants EOne and Google's discovery violations; b. Recovery of sanctions EOne previously requested and was partially granted against Plaintiff; and c. Punitive sanctions proportional to the severity of Defendants EOne and Google's misconduct, aimed at deterring future violations and upholding the integrity of the judicial process.

257.    Plaintiff seeks an award of damages to compensate Plaintiff for litigation costs, and other financial losses caused by Defendants EOne and Google's misconduct.

258.    Plaintiff seeks an award of punitive damages to punish Defendants Google, EOne UK and Osborn for their intentional and egregious conduct and to deter similar misconduct by them and others in the future.

259.    Plaintiff seeks injunctive relief, compelling Defendants Google, EOne UK and Osborn to produce all relevant documents and comply with discovery obligations under court

- 56 -

1    supervision.

2         260.    Plaintiff seeks an award of costs and reasonable attorneys' fees permitted by law

3    or equity, and such other and further relief as the Court deems just and proper.

4                              **SEVENTH CLAIM FOR RELIEF**

5                              **Falsifying Financial Statements**

6                         ***(Against Defendants EOne, and Google)***

7         261.    Plaintiff incorporates by reference each and every allegation set forth in

8    paragraphs 1 through 260 of this Complaint as though fully set forth herein.

9         262.    This claim arises under federal and California law, including but not limited to: a.

10   18 U.S.C. § 1519 (Alteration or Falsification of Records in Federal Investigations); b. 18 U.S.C. §

11   1001 (False Statements in Federal Matters); c. California Penal Code § 470 (Forgery, including

12   financial records); d. California Business and Professions Code § 17200 (Unfair Competition); e.

13   California Civil Code § 1709 (Deceit).

14        263.    Defendants EOne UK, Osborn and Google, acting individually and collectively,

15   engaged in a deliberate scheme to falsify financial records and statements. This conduct included

16   but was not limited to: a. Altering or omitting material information in royalty reports and

17   licensing agreements related to Plaintiff's intellectual property; b. Submitting incomplete or

18   falsified financial disclosures in response to discovery requests during federal proceedings; c.

19   Concealing key agreements and revenue streams that demonstrated the unauthorized exploitation

20   of Plaintiff's intellectual property.

21        264.    The falsified financial records were material to Plaintiff's claims because they:

22   (a) Misrepresented the total revenues generated from Plaintiff's intellectual property, thereby

23   obscuring the full scope of Defendants' financial benefits derived from infringing activities;

24   (b) Concealed the breadth of Defendants' unauthorized use and distribution of Plaintiff's work,

25   which was critical to demonstrating the extent of infringement; and (c) Deprived Plaintiff of the

26   evidence necessary to accurately calculate damages, enforce his rights, and pursue his claims in a

27   timely and effective manner.

28        265.    Defendants' actions were intentional, calculated, and undertaken with the specific

                                            - 57 -

1  intent to: a. Mislead Plaintiff and the courts regarding the financial benefits derived from

2  infringing activities; b. Evade liability and reduce potential damages owed to Plaintiff; and c.

3  Obstruct Plaintiff's ability to litigate his claims by withholding or falsifying critical evidence.

4      266.    Specific instances of falsification include but are not limited to: a. Royalty reports

5  that failed to account for all revenues derived from Plaintiff's works distributed through all

6  Google entities and platforms; b. Licensing agreements concealed or altered to misrepresent the

7  extent of Defendants' use of Plaintiff's intellectual property; c. Financial statements submitted to

8  Plaintiff during federal proceedings that omitted material facts or included false information.

9      267.    Defendants' conduct constitutes violations of the following laws:

10  (a) 18 U.S.C. § 1519, by knowingly falsifying or concealing records with the intent to impede

11  federal investigations and judicial proceedings; (b) 18 U.S.C. § 1001, by making materially false

12  statements in matters within federal jurisdiction, including during discovery proceedings;

13  (c) California Penal Code § 470, by forging or altering financial documents with intent to defraud

14  Plaintiff; (d) California Civil Code § 1709, by engaging in deceitful conduct designed to mislead

15  Plaintiff and cause financial harm; and (e) California Business and Professions Code § 17200, by

16  engaging in unlawful, unfair, and fraudulent business practices that caused significant harm to

17  Plaintiff. These violations underscore Defendants' coordinated efforts to evade accountability and

18  deprive Plaintiff of his lawful rights.

19      268.    As a direct and proximate result of Defendants EOne and Google's falsification of

20  financial records, Plaintiff has suffered significant harm, including but not limited to:

21      (1) Financial losses of royalties and licensing fees;

22      (2) Litigation and costs incurred to uncover and address Defendants' misconduct;

23      (3) Reputational harm due to Defendants' misrepresentations;

24      (4) Emotional distress caused by Defendants' intentional and deceitful conduct.

25      269.    Defendants' actions were egregious, willful, and carried out with malice, fraud,

26  and oppression, justifying an award of punitive damages under California Civil Code § 3294.

27  Such damages are necessary to punish Defendants for their intentional misconduct and to deter

28  similarly unlawful practices by large corporations that should be held to the highest standards of

1    ethical conduct.

2         270.    Plaintiff respectfully requests a declaratory judgment that Defendants violated

3    federal and California law by falsifying financial statements and engaging in deceitful conduct.

4         271.    Plaintiff seeks an award of compensatory damages, an amount to be proven at trial,

5    including lost revenues, and consequential damages.

6         272.    Plaintiff further seeks an award of punitive damages to punish Defendants for their

7    intentional and egregious conduct and to deter future violations.

8         273.    Plaintiff seeks injunctive relief requiring Defendants to abstain from further acts of

9    obstruction. This includes, but is not limited to: a. Disclose all financial records related to

10   Plaintiff's intellectual property; and b. Submit corrected financial statements and full royalty

11   reports.

12        274.    Plaintiff requests an order imposing adverse inferences against Defendants

13   regarding the concealed, altered, or falsified records.

14        275.    Plaintiff also seeks an award of costs and reasonable attorneys' fees permitted by

15   law or equity, and such other and further relief as the Court deems just and proper.

16                            **EIGHTH CLAIM FOR RELIEF**

17                       **Fraud – California Civil Code § 338(d)**

18                     ***(Against Defendants EOne, Apple and Google)***

19        276.    Plaintiff incorporates by reference each and every allegation set forth in

20   paragraphs 1 through 275 of this Complaint as though fully set forth herein.

21        277.    This claim arises under California Civil Code §§ 1572, 1709, and 1710, as well as

22   Federal Rule of Civil Procedure 9(b).

23        278.    Defendants EOne, Apple, and Google, acting individually and collectively,

24   engaged in a deliberate and systematic scheme to defraud Plaintiff through coordinated

25   misconduct. This included misrepresentation, concealment of material facts, and collusion.

26   Defendants' coordinated actions were designed to present a false and misleading narrative,

27   obstruct Plaintiff's ability to pursue his claims, and evade accountability for their unauthorized

28   exploitation of Plaintiff's intellectual property.

                                    - 59 -

279.     California Civil Code § 338(d) provides a three-year statute of limitations for actions based on fraud or mistake, which begins to run upon discovery of the facts constituting the fraud. Plaintiff's claims are timely, as they were filed within three years of the discovery of Defendants' fraud.

280.     Defendants knowingly and intentionally engaged in fraudulent conduct with the intent to deceive Plaintiff and conceal material facts related to the unauthorized use, distribution, reproduction, and exploitation of Plaintiff's intellectual property, including the unauthorized use of his Motion Picture and its metadata in California. The fraudulent acts and omissions of Defendants include, but are not limited to, the following counts:

<div align="center">

*First Count* – **Misrepresentations Regarding Licensing Agreements**

*(Against EOne UK and Osborn)*

</div>

281.     Based on a limited jurisdictional discovery conducted in case no. 4:20-cv-01527-YGR, between October 8, 2020 and December 22, 2020, Defendants EOne UK and Osborn knowingly presented false and incomplete licensing agreements to Plaintiff and the Court, as in the First Apple Agreement and First Google Agreement. These agreements misrepresented and concealed the true scope of Defendants' unauthorized use of Plaintiff's Motion Picture.

282.     In or around February 8, 2023, and March 17, 2023, Plaintiff obtained the Second Apple Agreements and Second Google Agreements only to discover that EOne had authorized Apple and Google to use the unauthorized version of his Motion Picture in California and the United States under these separate agreements. Defendants EOne UK and Osborn intentionally concealed these agreements and their contents from Plaintiff and the Court. The Second Apple Agreements and Second Google Agreements further contradicted EOne's prior representations regarding the scope of its licensing activities in California.

283.     Defendants EOne UK and Osborn knew their representations were false and incomplete at the time they made them and acted with the intent to induce Plaintiff's reliance on the misrepresented agreements to avoid liability and gain an unfair advantage in litigation. Plaintiff justifiably relied on these representations, as they were presented as authentic and complete in a judicial proceeding, where truthful disclosures are expected.

<div align="center">- 60 -</div>

1       ***Second Count* – False Statements Under Oath** (*Against EOne UK and Osborn*)

2       284.    Based on a limited jurisdictional discovery conducted in case no. 4:20-cv-01527-

3       YGR, in or around October 8, 2020, Defendants EOne UK and Simon Osborn knowingly

4       presented false statements under oath to Plaintiff and the Court. The statements misrepresented

5       and concealed that EOne UK and EOne US engaged in licensing activity concerning the

6       unauthorized version of Plaintiff's Motion Picture with companies located in the Northern

7       District of California.

8       285.    Between March 17, 2023 and March 31, 2023, Plaintiff discovered that EOne had

9       licensed the unauthorized version of his Motion Picture to Apple and Google located in the

10      District. Apple explicitly admitted that EOne had licensed *Strength and Honour* for use with them

11      in California. Defendants EOne UK and Osborn intentionally concealed this and made false

12      statements under oath to Plaintiff and the Court.

13      286.    Defendants EOne UK and Osborn knew their representations and statements were

14      false at the time they made them and acted with the intent to induce Plaintiff and the Court's

15      reliance on these false statements to avoid liability and gain an unfair advantage in litigation.

16      Plaintiff justifiably relied on these false statements, as they were presented as authentic and

17      verified under penalty of perjury in a judicial proceeding.

18      ***Third Count* – Concealment of Material Facts** (*Against EOne and Google*)

19      287.    Defendants EOne and Google knowingly withheld and concealed the existence of

20      *additional* licensing agreements, which authorized Google to produce, copy, reproduce,

21      distribute, sell, perform and monetize the unauthorized version of Plaintiff's Motion Pictures in

22      California.

23      288.    On July 12, 2021, Google provided Plaintiff with its Objections and Responses to

24      Plaintiff's Pre-Discovery Interrogatories Nos. 1-3, as ordered by the Court. In its responses,

25      Google failed to provide any substantive additional information and instead referred Plaintiff to

26      the previously produced First Google Agreement by Entertainment One US LP, asserting that the

27      agreement had already been provided to Plaintiff.

28      289.    On March 17, 2023, Plaintiff discovered that EOne had licensed Google to use the

- 61 -

1    unauthorized version of his Motion Picture in California and the United States under the Second

2    Google Agreements. Defendants EOne concealed these agreements completely, and Google

3    intentionally concealed these agreements and their contents from Plaintiff and the Court for over

4    600 days.

5        290.    Defendants EOne and Google knew their representations in 2020 – 2021 were

6    false and incomplete at the time they made them and acted with the intent to induce Plaintiff's

7    reliance on the First Google Agreement and misrepresentations made by Google in the Pre-

8    Discovery Interrogatories would avoid liability and gained an unfair advantage in litigation.

9    Plaintiff justifiably relied on these representations, as they were presented as authentic and

10    complete in a judicial proceeding, where truthful disclosures are expected.

11        ***Fourth Count* – Falsification of Financial Records** (*Against EOne and Google*)

12        291.    Defendants EOne and Google knowingly falsified royalty statements and financial

13    records to misrepresent the revenue and royalties owed to Plaintiff and to conceal the

14    unauthorized use of the Motion Picture.

15        292.    Between approximately March 17, 2023 and May 12, 2023, Google presented

16    Plaintiff with unsupported excel sheets showing it had only made a couple of hundred dollars for

17    the unauthorized version of the Motion Picture. Meanwhile, on May 12, 2023, Plaintiff received

18    additional evidence from Mainsail confirming that, as of January 29, 2020, Shoreline had an

19    outstanding royalty balance of £7,901.14 or approximately $10,287.12 USD with EOne UK for

20    the unauthorized version of Plaintiff's Motion Picture.

21        293.    On the same date, Plaintiff also received a EOne UK royalty report from Mainsail

22    dated February 17, 2022, which reflected a deficit of £155,939.88 recorded in the "Cinema"

23    column, despite the film not being theatrically released by EOne and this charge now only

24    appearing after 12 years. Defendants EOne and Google knowingly provided false financial

25    information to minimize their liability.

26        ***Fifth Count* – Counterfeit Materials** (*Against EOne UK, Apple and Google*)

27        294.    Defendants knowingly created and distributed counterfeit versions of Plaintiff's

28    Motion Picture, including altered metadata, covers, and trailers, without Plaintiff's consent or

- 62 -

1    knowledge in California and the United States. Despite Plaintiff notifying EOne UK about their

2    unauthorized use in January and February 2010, Defendant EOne dismissed his concerns and

3    continued their unauthorized activities. These actions demonstrate a blatant disregard for

4    Plaintiff's intellectual property rights and the integrity of his creative works.

5        295.    In or around February 8, 2023, and March 31, 2023, Plaintiff only obtained

6    verifiable evidence that Defendants had been using the unauthorized version and counterfeit

7    materials of his Motion Picture in California, which had been concealed from him until then.

8        296.    Defendants falsely represented that their marketing and distribution of the

9    unauthorized version of Plaintiff's Motion Picture were authorized under agreements with

10   Mainsail. In reality, Plaintiff had not assigned any such rights to Mainsail, and Defendants

11   knowingly distributed counterfeit materials in violation of Plaintiff's exclusive rights under

12   federal copyright law in the U.S. jurisdiction, which they had no authorization to do from

13   Plaintiff. This conduct also infringed Plaintiff's moral rights as the author, further compounding

14   the harm caused by Defendants' fraudulent actions.

15       297.    As a direct and proximate result of Defendants' fraudulent conduct across the

16   counts enumerated above, Plaintiff has suffered substantial harm, including but not limited to:

17           (1) Loss of revenue and royalties resulting from the unlicensed distribution and

18           exploitation of Plaintiff's Motion Picture;

19           (2) Financial devastation and damage to Plaintiff's intellectual property rights on a

20           global scale;

21           (3) Reputational harm caused by Defendants' use of counterfeit marketing materials

22           and their misrepresentation of Plaintiff's Irish Motion Picture as a "Brit flick";

23           (4) Significant legal fees and costs incurred in uncovering and addressing Defendants'

24           fraudulent conduct; and

25           (5) Emotional distress and mental anguish caused by Defendants' deceit, cultural

26           appropriation, and the resulting harm to Plaintiff's professional and personal reputation.

27       298.    Defendants' fraudulent acts were willful, malicious, and oppressive, entitling

28   Plaintiff to an award of punitive damages under California Civil Code § 3294. Punitive damages

1    are warranted to punish Defendants for their intentional misconduct and to deter such future

2    violations. The harm caused by Defendants' deceit and cultural appropriation of Plaintiff's work

3    underscores the need for such deterrence and accountability.

### NINTH CLAIM FOR RELIEF

#### Civil Conspiracy

#### (Against Defendants EOne UK, Osborn, Apple and Google)

7    299.    Plaintiff incorporates by reference each and every allegation set forth in

8    paragraphs 1 through 298 of this Complaint as though fully set forth herein.

9    300.    Under California law, civil conspiracy is not an independent cause of action but a

10    legal doctrine that imposes liability on persons who, although not committing the tort themselves,

11    share a common plan or design to commit it. See *Applied Equipment Corp. v. Litton Saudi Arabia*

12    *Ltd.*, 7 Cal. 4th 503, 510–511 (1994). A conspiracy requires (1) the formation and operation of the

13    conspiracy, (2) misconduct done pursuant to the conspiracy, and (3) resulting damages. See *AREI*

14    *II Cases*, 216 Cal. App. 4th 1004, 1022 (2013).

15    301.    Defendants EOne UK, Osborn, Apple, and Google formed and operated a

16    conspiracy to unlawfully exploit an unauthorized version of Plaintiff's copyrighted Motion

17    Picture in California and the Republic of Ireland without Plaintiff's authorization. Defendants in

18    separate groups and collectively agreed to commit acts of fraud, misrepresentation, trafficking in

19    counterfeit labels, spoliation of evidence, obstruction of justice, and unfair competition to conceal

20    their unauthorized use of Plaintiff's intellectual property, as described in detail in this Complaint.

21    302.    The conspiracy was driven by Defendants' mutual financial interests in exploiting

22    Plaintiff's intellectual property and shielding themselves from liability for their wrongful conduct.

23    303.    In furtherance of their conspiracy, Defendants committed the following overt acts:

24    a. Defendants engaged in coordinated effort to distribute and profit from the unauthorized version

25    of *Strength and Honour*; b. Defendants knowingly altered metadata, created counterfeit

26    promotional materials and falsely marketed it to consumers, as a "Brit flick", damaging Plaintiff's

27    reputation, especially in Ireland and misleading the public globally; c. Defendants altered or

28    concealed evidence of this misconduct, including documents, financial records, and their use of

1    the Motion Picture's metadata to obstruct Plaintiff's ability to seek redress; d. Defendants'

2    representatives provided false statements to court proceedings to obscure their misconduct; e.

3    Defendants conspired to align their false narrative that obstructed Plaintiff's ability to pursue his

4    claims; and f. Defendants colluded to unlawfully exploit Plaintiff's intellectual property for their

5    own commercial benefit without Plaintiff's consent, authorization or compensation.

6        304.   Defendants acted with the common intent to defraud Plaintiff, misappropriate his

7    property and intellectual property, and deprive him of rightful compensation, his legal rights and

8    the opportunity for a fair adjudication of his claims.

9        305.   Defendants EOne UK, Osborn, Apple and Google, acting in separate groups, and

10   collectively played a specific role in furthering the conspiracy: a. EOne facilitated the

11   unauthorized licensing and distribution of Plaintiff's Motion Picture and its metadata in

12   California; b. Apple and Google provided platforms and infrastructure for the authorized

13   distribution in California and profited from advertising and sales; c. Concealed publicly their

14   unlawful activities to shield themselves from liability in California; and d. Gain an unfair

15   competitive advantage by exploiting Plaintiff's intellectual property and metadata in California,

16   without his knowledge or consent.

17       306.   Defendants conduct constitute a conspiracy to commit unlawful acts pursuant to

18   California Civil Code §§ 1709–1710 (fraudulent misrepresentation); California Penal Code § 182

19   (criminal conspiracy) and 18 U.S.C. § 371, as Defendants conspired to defraud the United States

20   by obstructing the judicial process and withholding or concealing material evidence.

21       307.   Defendants' actions also constitute violations of the Racketeer Influenced and

22   Corrupt Organizations Act (18 U.S.C. § 1962(d)), as they conspired to engage in a pattern of

23   racketeering activity.

24       308.   As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered

25   substantial harm, including but not limited to:

26              (1) Financial harm, lost royalties, licensing fees and opportunities, and profits;

27              (2) Plaintiff endured reputational damage, loss of earnings and the loss of future

28              business opportunities caused by Defendants' false representations and coordinated

- 65 -

1    obstruction of justice;

2        (3) Emotional distress resulting from Defendants' malicious and deceitful conduct; and

3        (4) Legal costs, expenses and other damages to be proven at trial.

4    309.    Each Defendant is jointly and severally liable for all damages caused by the

5    conspiracy, as their coordinated actions directly resulted in harm to Plaintiff.

6    310.    Plaintiff seeks an award of compensatory damages, to compensate Plaintiff in an

7    amount to be proven at trial, including all his financial losses, emotional distress, and reputational

8    harm cause by Defendants' conspiratorial conduct pursuant to California Civil Code § 3333.

9    311.    Plaintiff further seeks an award of exemplary and punitive damages punitive

10    damages due to Defendants' malicious, fraudulent, and oppressive conduct, as described in the

11    aforementioned to deter others from engaging in similar misconduct in the future.

12    312.    Plaintiff seeks an order for injunctive relief, requiring Defendants produce all

13    relevant documents wrongfully withheld and to cease any ongoing or further acts of obstruction.

14    This includes, but is not limited to: a. Disclose all financial records related to Plaintiff's

15    intellectual property; and b. Submit corrected financial statements and full royalty reports.

16    313.    Plaintiff requests an order imposing adverse inferences against Defendants for

17    their spoliation of evidence and obstructionist tactics regarding the concealed, altered, or falsified

18    records.

19    314.    Plaintiff seeks an award of costs, expenses and reasonable attorneys' fees

20    permitted by law or equity incurred in pursuing this claim, and such other and further relief as the

21    Court deems just and proper.

22    **TENTH CLAIM FOR RELIEF**

23    **Intentional Infliction of Emotional Distress (IIED)**

24    ***(Against Defendants EOne, Apple and Google)***

25    315.    Plaintiff incorporates by reference each and every allegation set forth in

26    paragraphs 1 through 314 of this Complaint as though fully set forth herein.

27    316.    Defendants Apple, Google, EOne UK and Osborn engaged in a deliberate and

28    coordinated scheme of extreme and outrageous conduct, intended to cause Plaintiff severe

1    emotional distress and undertaken with reckless disregard for the substantial probability of
2    causing such distress.

3        317.    Defendants knowingly and intentionally copied, reproduced, hosted and
4    distributed an authorized version of Plaintiff's copyrighted Motion Picture for over a decade in
5    California, as Plaintiff discovered between February 8, 2023 and March 31, 2023, without
6    Plaintiff's knowledge or consent, in direct violation of his exclusive rights under federal law and
7    federal copyright law.

8        318.    EOne UK and Osborn actively and deliberately concealed the existence of the full
9    agreements with Apple and Google that facilitated the unauthorized distribution of Plaintiff's
10   Motion Picture in California, depriving Plaintiff of critical information necessary to protect his
11   intellectual property and enforce his rights.

12       319.    Defendants acted with the intent to exploit Plaintiff's intellectual property for their
13   financial gain, demonstrating a reckless disregard for the foreseeable emotional, professional, and
14   reputational harm their actions would cause through their false marketing.

15       320.    EOne's concealment of material agreements, coupled with its provision of false
16   and misleading interrogatory responses during litigation, constitutes a deliberate effort to mislead
17   Plaintiff and the Court, obstruct justice, and compound his emotional distress.

18       321.    Apple and Google unauthorized use of Plaintiff's Motion Picture and associated
19   metadata in California for over a decade, coupled with their failure to exercise due diligence,
20   evidences a reckless disregard for Plaintiff's rights and emotional well-being.

21       322.    Defendants Apple, Google, and EOne's conduct was extreme and outrageous,
22   exceeding all bounds of decency tolerated in a civilized society. Specifically, Defendants engaged
23   in the following acts:

24           (a) Exploitation of Plaintiff's Intellectual Property:

25               1. Plaintiff obtained verifiable proof between February and March, 2023 that
26                  Defendants knowingly copied, reproduced, hosted, performed and distributed
27                  Plaintiff's copyrighted Motion Picture on platforms including Apple iTunes, Google
28                  Play, and YouTube in California for over a decade without Plaintiff's knowledge,

- 67 -

consent, or compensation.

2. This unauthorized distribution occurred in California, where Apple and Google are
headquartered, and caused significant harm to Plaintiff's rights and reputation.

3. Defendants profited financially from this unauthorized distribution while
depriving Plaintiff of the financial and reputational benefits of his work.

(b) Fraudulent Misrepresentation and Omissions:

1. EOne UK and Osborn deliberately withheld information about agreements with
Apple and Google that facilitated the unauthorized distribution in California,
knowing this concealment would harm Plaintiff emotionally and professionally.

2. Defendants provided false and misleading responses during discovery, frustrating
Plaintiff's ability to uncover the full extent of their misconduct.

(c) Pattern of Exploitation:

1. Defendants' engaged in a broader pattern of exploiting the creator by using
his intellectual property without proper authorization or compensation.

2. The coordinated actions reflect an intentional disregard for Plaintiff's rights
and a prioritization of their financial gain at his expense.

(d) Litigation Misconduct:

1. Defendants engaged in spoliation of evidence, false statements under oath, and
other discovery abuses to undermine Plaintiff's claims and obstruct justice.

2. Defendants employed tactics in bad faith and frivolous arguments to
prolong litigation, misrepresented facts by requesting to seal documents as
confidential, then making public statements contradicting those claims,
exacerbating Plaintiff's emotional distress.

(e) Retaliatory Conduct:

1. Defendants engaged in targeted actions to intimidate and retaliate against
Plaintiff for asserting his rights, including public and private discrediting of
Plaintiff's reputation, including but not limited to EOne seeking sanctions against
him.

1      2. Defendants' actions cause Plaintiff significant emotional harm, including

2          anxiety, public humiliation, pain, shame and a profound sense of powerlessness.

3      323.    Defendants acted with intent to cause Plaintiff emotional distress with reckless

4  disregard for the likelihood that their conduct would cause such distress, demonstrating a willful

5  and callous indifference to Plaintiff's mental and emotional well-being.

6      324.    Defendants' extreme and outrageous conduct, including the unauthorized us and

7  exploitation of Plaintiff's intellectual property within the United States, fraudulent concealment,

8  and litigation misconduct, was a substantial factor in causing Plaintiff's severe emotional distress.

9      325.    Plaintiff has suffered the following damages as a direct and proximate result of

10  Defendants' conduct: (a) Severe emotional distress, manifesting as anxiety, pain, feelings of

11  betrayal, frustration, humiliation, powerlessness, shame and physical symptoms such as hair loss;

12  (b) Damage to Plaintiff's professional and personal reputation, including loss of credibility and

13  standing in his industry; (c) Substantial financial losses, including lost revenue, diminished future

14  opportunities, and expenses incurred to mitigate Defendants' wrongful conduct.

15      326.    Defendants' conduct was particularly egregious given their positions as industry

16  leaders with substantial resources and influence. The unauthorized distribution of Plaintiff's

17  Motion Picture for over a decade, coupled with their deliberate public concealment of material

18  facts and provision of false statements during litigation, demonstrates a calculated effort to

19  exploit Plaintiff and frustrate his pursuit of justice.

20      327.    Defendants' conduct was motivated by financial gain and undertaken with a

21  callous disregard for the harm inflicted on Plaintiff. The harm suffered by Plaintiff was a direct

22  and foreseeable consequence of Defendants' actions within California, warranting punitive

23  damages to punish their misconduct and deter similar actions in the future.

24      328.    Plaintiff requests compensatory damages for severe emotional distress, including

25  anxiety, humiliation, and reputational harm, in an amount to be determined at trial.

26      329.    Plaintiff requests punitive damages to punish Defendants for their egregious

27  misconduct and deter similar actions in the future.

28      330.    Plaintiff seeks an order for injunctive relief, enjoining Defendants from further

1    unauthorized use, distribution, or exploitation of Plaintiff's Motion Picture.

2        331.    Plaintiff seeks an award of costs, expenses and attorneys' fees permitted

3    by law or equity, and such other and further relief as the Court deems just and proper.

4                            **ELEVENTH CLAIM FOR RELIEF**

5                                   **Abuse of Process**

6                  *(Against Defendants EOne UK, Osborn, Apple and Google)*

7        332.    Plaintiff incorporates by reference each and every allegation set forth in

8    paragraphs 1 through 331 of this Complaint as though fully set forth herein.

9        333.    Abuse of process is a tort recognized under California law, which arises when a

10   party uses the judicial process for an improper purpose, outside the scope of the process's

11   intended purpose, and causes harm to the opposing party. This claim arises under, including but

12   not limited to: a. California common law; b. California Civil Code § 47 (Privilege limitations and

13   abuse of judicial proceedings); c. California Code of Civil Procedure § 128.5 (Sanctions for bad-

14   faith actions or tactics); d. California Civil Code § 1708 (recognizing a duty to refrain from

15   injuring others through unlawful means.); and e. Federal statutes, including 18 U.S.C. §§ 1505

16   and 1519 (Obstruction of Justice and Falsification of Records).

17       334.    Defendants EOne UK, Osborn, Apple and Google knowingly initiated and pursued

18   motions and litigation tactics against Plaintiff for ulterior motives unrelated to the legitimate

19   purposes of the judicial process. Specifically, Defendants engaged in but not limited to: a.

20   Submission of False Evidence: Introducing fabricated licensing agreements, royalty records, and

21   financial documents to mislead the court and undermine Plaintiff's claims; b. Obstruction of

22   Discovery: Willfully concealing, or altering material evidence critical to Plaintiff's case,

23   including correspondence, contracts, and financial documentation; and c. Coordinated

24   Misconduct: Acting in concert to manipulate judicial proceedings, delay litigation, and evade

25   accountability.

26       335.    Defendants' actions were undertaken with ulterior motives, including but not

27   limited to: (a) Harassing Plaintiff and increasing litigation costs to deter pursuit of legitimate

28   claims; (b) Concealing their unlawful conduct, including copyright infringement, trafficking in

                                            - 70 -

1    counterfeit labels and fraudulent activities; (c) Undermining Plaintiff's ability to present a full and

2    fair case; (d) Disrupting the judicial process to avoid accountability for their misconduct; (e)

3    Securing a strategic advantage in litigation by abusing procedural mechanisms.

4        336.    Defendants' filed baseless motions designed to mislead the court and divert

5    attention from their own misconduct. Defendant misrepresented facts by requesting to seal

6    documents or entire portions of documents as confidential, then making false public statements

7    contradicting the sealed information to prejudice Plaintiff. This bad-faith conduct was intended to

8    mislead the Court, obstruct Plaintiff, and abuse the judicial process, undermining the integrity of

9    these proceedings.

10       337.    As a direct and proximate result of Defendants' abuse of process, Plaintiff suffered

11   significant harm, including but not limited to:

12           (1) Substantial financial losses, including increased litigation expenses and lost

13               revenue caused by Defendants' obstructionist tactics;

14           (2) Damage to Plaintiff's personal and professional reputation, as well as his ability to

15               pursue future creative endeavors;

16           (3) Emotional distress caused by Defendants' deliberate, deceitful, prolonged and

17               malicious actions; and

18           (4) Additional cost, expenses and damages to be proven at trial.

19       338.    Defendants' conduct constitutes abuse of process under California common law, as

20   they used judicial processes for improper purposes beyond the scope of those processes.

21   Defendants' bad-faith actions violate California Civil Code § 1708, as they failed to fulfill their

22   duty to refrain from injuring Plaintiff through unlawful means.

23       339.    Defendants' acted with malice, oppression, and fraud, as their actions were willful,

24   wanton, and taken with a conscious disregard of Plaintiff's rights, justifying the imposition of

25   punitive damages under California Civil Code § 3294 to deter similar misconduct in the future.

26       340.    Plaintiff seeks an award of compensatory damages, an amount to be proven at trial,

27   to redress the financial, emotional, and reputational harm caused by Defendants' abuse of

28   process.

341.    Plaintiff further seeks an award of punitive damages to punish Defendants for their intentional, oppressive, fraudulent and egregious conduct to deter future violations.

342.    Plaintiff seeks an injunction prohibiting Defendants from engaging in abuse of judicial processes and an order imposing adverse inferences against Defendants regarding evidence wrongfully withheld.

343.    Plaintiff also seeks an award of costs, expenses and reasonable attorneys' fees permitted by law or equity, and such other and further relief as the Court deems just and proper.

**TWELFTH CLAIM FOR RELIEF**

**Claim for Relief: California's Unfair Competition Law (UCL)**

**(Cal. Bus. & Prof. Code § 17200 et seq.)**

***(Against Defendants EOne, Apple and Google)***

344.    Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1 through 343 of this Complaint as though fully set forth herein.

345.    Plaintiff brings this claim under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.), which prohibits any unlawful, unfair, or fraudulent business act or practice. Defendants Apple and Google, through their unauthorized copying, hosting, reproducing, performing and distribution of Plaintiff's copyrighted motion picture in California, engaged in business practices that are unlawful, unfair, and fraudulent, causing significant harm to Plaintiff and violating California law.

346.    Defendants Apple, Google and EOne engaged in unlawful business practices, including but not limited to the following: (a) Violation of the Copyright Act of 1976 (17 U.S.C. §§ 101, *et seq.*): Distributing Plaintiff's copyrighted Motion Picture on their platforms (YouTube, Google Play, and iTunes) without Plaintiff's authorization in California, infringing his exclusive rights under federal law; (b) Breach of California's Common Law Right of Publicity: Distributing Plaintiff's work for commercial gain without his knowledge or consent, misappropriating Plaintiff's intellectual property and violating his rights under California law; (c) Violation of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500): Misrepresenting Plaintiff's Motion Picture as a "Brit flick" from California and falsely marketing it to consumers globally,

1    damaging Plaintiff's reputation and misleading the public.

2        347.    Defendants Apple, Google and EOne engaged in unfair business practices by

3    exploiting their dominant market positions to profit from Plaintiff's Motion Picture without his

4    authorization, causing harm to Plaintiff that outweighed any potential benefits to consumers or

5    competition. Specifically: (a) Defendants' unauthorized distribution deprived Plaintiff of the

6    ability to control the dissemination, marketing, and financial benefits of his work; (b) Defendants'

7    actions caused professional and personal reputational harm to Plaintiff by misrepresenting the

8    nature and origin of his motion picture; (c) Defendants acted in bad faith by concealing the

9    unauthorized distribution in California until 2023, frustrating Plaintiff's ability to mitigate

10   damages or seek timely remedies.

11       348.    Defendants engaged in fraudulent business practices by intentionally misleading

12   consumers and Plaintiff regarding the nature and distribution of Plaintiff's Motion Picture: (a)

13   Misrepresentation to Consumers: Defendants falsely labeled Plaintiff's Motion Picture as a "Brit

14   flick," misleading consumers about its origin and artistic intent; (b) Concealment of Unauthorized

15   Use: Defendants failed to disclose material facts regarding their unauthorized distribution of

16   Plaintiff's work, including full revenues and profits generated from its use; (c) Deceptive

17   Practices: Defendants EOne and Google intentionally completely concealed and omitted

18   information about their licensing arrangements for over 600 days from Plaintiff.

19       349.    Apple and Google had distributed his copyright protected Motion Picture on the

20   following dates: (a) December 29, 2021: Google distributed Plaintiff's motion picture on

21   YouTube and Google Play without Plaintiff's authorization; (b) January 7, 2022: Apple

22   distributed the same unauthorized version of the motion picture on iTunes; (c) Between February

23   8 and March 31, 2023: Plaintiff obtained verifiable evidence that Apple and Google copied,

24   hosted, reproduced, performed and distributed Plaintiff's Motion Picture on the Google Play,

25   iTunes and YouTube platforms in California without his consent, knowledge, or compensation in

26   California, since 2010 and 2011, respectively.

27       350.    Defendants continued to profit from Plaintiff's motion picture without his consent

28   since 2010, concealing full revenues generated and frustrating Plaintiff's ability to recover

- 73 -

1    damages.

2        351.    Defendants, Apple and Google, headquartered in California, used their platforms

3    and infrastructure within the state to copy, reproduce, perform, distribute and monetize Plaintiff's

4    work without his knowledge or consent. Their conduct caused harm to Plaintiff within California,

5    where Defendants Apple and Google maintain substantial business operations and derive

6    significant revenue.

7        352.    Plaintiff respectfully request that the Court grant the following relief:

8            (1) An order enjoining Defendants from:

9                (a) Further unauthorized distribution of Plaintiff's Motion Picture.

10               (b) Misrepresenting the nature, origin, or ownership of Plaintiff's work;

11           (2) An order requiring Defendants to:

12               (a) Disgorge all profits and revenues derived from the unauthorized

13                   distribution of Plaintiff's Motion Picture.

14               (b) Provide a full accounting of all financial benefits received from the use of

15                   Plaintiff's work;

16           (3) A declaratory judgment that Defendants' conduct constitutes unlawful, unfair, and

17               fraudulent business practices under California's UCL;

18           (4) An award of costs, expenses, and attorneys' fee, and pre- and post-judgment

19               interest as permitted by law.

20       353.    Although punitive damages are not recoverable under the UCL itself, Plaintiff

21   seeks such damages under other applicable claims to deter Defendants' egregious misconduct.

22       354.    Plaintiff seeks any other relief the Court deems just and proper, including equitable

23   remedies necessary to prevent further harm to Plaintiff.

24                                   **PRAYER FOR RELIEF**

25       WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in

26   Plaintiff's favor and grant the following relief:

27       355.    A declaration that Defendants' actions, including but not limited to obstruction of

28   justice, breach of discovery obligations and falsifying financial statements were unlawful and

                                            - 74 -

1    violated Plaintiff's rights under federal and state law.

2        356.    An award of compensatory damages in an amount to be proven at trial, including

3    but not limited to:

4            (1) Damages for lost profits, royalties, and other financial harm caused by

5                Defendants' misconduct.

6            (2) Reimbursement for increased litigation costs and expenses incurred due to

7                Defendants' obstruction and fraudulent actions.

8            (3) Compensation for reputational harm and other non-economic damages

9                sustained by Plaintiff.

10       357.    An award of statutory damages pursuant to applicable federal and state laws,

11    including enhanced damages for intentional violations.

12       358.    An award of punitive damages to penalize Defendants for their oppressive,

13    fraudulent, malicious, and egregious conduct and to deter similar misconduct by Defendants and

14    others in the future.

15       359.    A preliminary and permanent injunction restraining Defendants, their agents,

16    representatives, employees, and affiliates from:

17            (1) Further infringing Plaintiff's intellectual property rights;

18            (2) Engaging in fraudulent, obstructive, or deceptive practices;

19            (3) Destroying, altering, or concealing any evidence relevant to this case.

20       360.    An order compelling Defendants to:

21            (1) Produce all relevant documents, communications, and financial statements

22                related to Plaintiff's claims;

23            (2) Fully comply with discovery obligations and cooperate in the resolution of

24                this matter.

25       361.    An order requiring Defendants to account for all revenues, profits, and other

26    benefits derived from their unlawful actions.

27       362.    An order requiring Defendants to disgorge all ill-gotten gains obtained as a result

28    of their misconduct.

- 75 -

363.    An award of Plaintiff's reasonable attorneys' fees, court costs, and related litigation expenses as permitted under applicable laws.

364.    An award of prejudgment and post-judgment interest on all monetary awards at the maximum rate allowed by law, calculated from the date of injury until payment is made in full.

365.    An order for any equitable remedies necessary to restore Plaintiff to the position he would have been in but for Defendants' wrongful conduct.

366.    Such other and further relief as this Court deems just, equitable, and proper under the circumstances, including remedies tailored to address the full scope of harm caused by Defendants' actions.

Dated: January 29, 2025

Respectfully submitted,

By: _____
Mark Mahon
movieman1000@live.com
Mariners Rest,
Mariners View Avenue,
Passage West,
Cork,
Ireland
Tel: + 353 87 742 4444

*Pro Se*

1

### DEMAND FOR JURY TRIAL

2          Plaintiff Mark Mahon hereby demands a trial by jury pursuant to Federal Rule of Civil

3    Procedure 38 on all issues so triable.

4

5    Dated: January 29, 2025                              Respectfully submitted,

6

7

8                                                        By: _____

9                                                            Mark Mahon
                                                             movieman1000@live.com
10                                                           Mariners Rest,
                                                             Mariners View Avenue,
11                                                           Passage West,
                                                             Cork,
12                                                           Ireland
                                                             Tel: + 353 87 742 4444
13

14                                                           *Pro Se*

15

16

17

18

19

20

21

22

23

24

25

26

27

28